Filed 8/22/11

# IN THE SUPREME COURT OF CALIFORNIA

SEABRIGHT INSURANCE COMPANY, )
)
      Plaintiff and Appellant, )
)           S182508
      v. )
)     Ct.App. 1/4 A123726
US AIRWAYS, INC., )
) City and County of San Francisco
      Defendant and Respondent; )   Super. Ct. No. CGC-06-458707
)
ANTHONY VERDON LUJAN, )
)
      Intervener and Appellant. )
_____)

Generally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work. (*Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).)  Here, we consider whether the *Privette* rule applies when the party that hired the contractor (the hirer) failed to comply with workplace safety requirements concerning the precise subject matter of the contract, and the injury is alleged to have occurred as a consequence of that failure.  We hold that the *Privette* rule does apply in that circumstance.

By hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes *to the contractor's employees* to ensure the

1

safety of the specific workplace that is the subject of the contract. That implicit delegation includes any tort law duty the hirer owes to the contractor's employees to comply with applicable statutory or regulatory safety requirements.[1] Such delegation does not include the tort law duty the hirer owes *to its own employees* to comply with the same safety requirements, but under the definition of "employer" that applies to California's workplace safety laws (see Lab. Code, § 6304),[2] the employees of an independent contractor are not considered to be the hirer's own employees.

The Court of Appeal here erred in reversing the trial court, which had granted summary judgment for defendant.

## I.

Defendant US Airways uses a conveyor to move luggage at San Francisco International Airport. The airport is the actual owner of the conveyor, but US Airways uses it under a permit and has responsibility for its maintenance. US Airways hired independent contractor Lloyd W. Aubry Co. to maintain and repair the conveyor; the airline neither directed nor had its employees participate in Aubry's work.

The conveyor lacked certain safety guards required by applicable regulations. Anthony Verdon Lujan, who goes by the name Verdon, was inspecting the

---

[1]    Not present here is a situation in which the relevant statutes or regulations indicate an intent to limit the application of *Privette*, *supra*, 5 Cal.4th 689, or preclude delegation of the tort law duty, if any, that the hirer owes to the contractor's employees.

[2]    All further undesignated statutory references are to the Labor Code.

conveyor as an employee of Aubry, and his arm got caught in its moving parts. Plaintiff SeaBright Insurance Company, Aubry's workers' compensation insurer, paid Verdon benefits based on the injury and then sued defendant US Airways, claiming the airline caused Verdon's injury and seeking to recover what it paid in benefits. Verdon intervened as a plaintiff in the action, alleging causes of action for negligence and premises liability.

Defendant US Airways sought summary judgment based on *Privette*, *supra*, 5 Cal.4th 689, and *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*). In *Hooker*, we held that the hirer of an independent contractor can be liable for a workplace injury of the contractor's employee if the hirer retained control over the contractor's work and exercised that control in a way that "affirmatively contribute[d]" to the employee's workplace injury. (*Hooker*, at p. 213.) Defendant US Airways argued that it did not "affirmatively contribute[]" to employee Verdon's injury.

Insurer SeaBright and employee Verdon (plaintiffs) countered with a declaration by an accident reconstruction expert, who stated that the lack of safety guards at "nip points" on the conveyor violated Cal-OSHA regulations (see § 6300 et seq. [Cal. Occupational Safety & Health Act of 1973 (Cal-OSHA)]; Cal. Code Regs., tit. 8, §§ 3999, 4002 [regulations governing conveyor safety]) and that the safety guards would have prevented Verdon's injury.

The trial court struck plaintiffs' declaration insofar as it discussed causation.[3] It found no evidence that US Airways "affirmatively contribute[d]" to

---

[3] The sufficiency of plaintiffs' showing on causation might provide an alternative basis for upholding the trial court's grant of summary judgment for

*(footnote continued on next page)*

the accident (*Hooker*, *supra*, 27 Cal.4th at p. 213) and granted summary judgment for defendant US Airways. The Court of Appeal reversed.

The Court of Appeal held that, under Cal-OSHA, defendant US Airways had a *nondelegable* duty to ensure that the conveyor had safety guards, and that the question whether the airline's failure to perform this duty "affirmatively contribute[d]" to plaintiff's injury (*Hooker*, *supra*, 27 Cal.4th at p. 213) remained a triable issue of fact, precluding summary judgment. The court noted conflicting views among the Courts of Appeal as to how our holdings in *Privette*, *supra*, 5 Cal.4th 689, and *Hooker*, *supra*, 27 Cal.4th 198, apply when the hirer of the independent contractor failed to comply with Cal-OSHA regulations, and the court followed a line of decisions holding that such omissions can expose the hirer to liability.

To resolve the conflict in the Courts of Appeal, we granted defendant US Airways's petition for review.

## II.

Two questions govern the assignment of tort liability: Did the defendant owe the plaintiff a duty of care? If so, what standard of care applied? (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 718; *Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546.) A plaintiff can rely on statutory law to show that a defendant owed the plaintiff a duty of care. (See *Elsner v. Uveges* (2004)

---

*(footnote continued from previous page)*

defendant US Airways. (See conc. opn. of Werdegar, J., *post*, pp. 1-3.) Like the Court of Appeal, we express no view on the question.

4

34 Cal.4th 915, 927 & fn. 8.) Here, plaintiffs contend (1) that Cal-OSHA imposed on defendant US Airways a duty of care, (2) that this duty of care extended to hired contractor Aubry's employees, and (3) that defendant could not delegate the duty to Aubry. Plaintiffs rely on a principle set forth in the Restatement Second of Torts: "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." (Rest.2d Torts, § 424.)

Defendant US Airways assumes that Cal-OSHA imposed on it a duty of care that extended to the employees of Aubry, an independent contractor, arguing that even if it had such a duty, our decisions, beginning with *Privette*, *supra*, 5 Cal.4th 689, reflect a strong policy "in favor of delegation of responsibility and assignment of liability" to independent contractors. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 671 (*Kinsman*).)

Whether Cal-OSHA imposes on an employer like US Airways a tort law duty of care that extends to the employees of other parties such as independent contractors is a question that remains unsettled. In *De Cruz v. Reid* (1968) 69 Cal.2d 217, 228–229 (*De Cruz*), this court answered the question in the affirmative, holding that an employer can be liable in tort to the employees of other parties for violations of Cal-OSHA and its regulations. But the statutory basis of that 1968 holding was arguably undermined by significant changes in the law in 1971 (see Stats. 1971, ch. 1751, §§ 2–3, pp. 3780–3781 [amending § 6304 and adding § 6304.5]) and in 1999 (see Stats. 1999, ch. 615, § 2, p. 4337 [amending § 6304.5]).

Under current law, a plaintiff may rely on Cal-OSHA requirements, in the same manner that it can rely on other statutes and regulations, in an attempt to

5

show that a defendant owed the plaintiff a duty of care (§ 6304.5), but the law now defines "employer" more narrowly than it did before 1971.  Before 1971, the Legislature's definition of the term "employer" included "every person having direction, management, control, or custody of any employment, place of employment, or any employee."  (Stats. 1937, ch. 90, § 6304, p. 306.)  This broad definition of employer was an underpinning of this court's 1968 holding in *De Cruz*, *supra*, 69 Cal.2d 217, that employers can be liable in tort to the employees of other parties for violations of workplace safety requirements.  (See *id*. at pp. 228–229.)  Through a 1971 amendment to section 6304, the Legislature narrowed its previous broad definition of employer, leaving simply a cross-reference to section 3300.  (See Stats. 1971, ch. 1751, § 2, p. 3780.)  As relevant here, section 3300 defines an employer as "[e]very person . . . which has any natural person in service."  (§ 3300, subd. (c).)  The effect of these changes on our holding in *De Cruz* is uncertain, but we have never held *under the present law* that a specific Cal-OSHA requirement creates a duty of care to a party that is not the defendant's own employee.

Here, however, as noted earlier (see p. 5, *ante*), US Airways assumes that Cal-OSHA imposed on it a tort law duty of care that extended to Aubry's employees, and it argues that it delegated any such duty to Aubry as part of its contract hiring Aubry to maintain and repair the conveyor.  Thus, the issue here turns on whether defendant US Airways could and did delegate to independent contractor Aubry any duty it owed to Aubry's employees to comply with the safety requirements of Cal-OSHA.

In analyzing this issue, we first consider (in pt. II.A., *post*) our decisions, beginning with *Privette*, *supra*, 5 Cal.4th 689, that have addressed the liability of an independent contractor's hirer for workplace injuries to the contractor's employees.  Our decisions recognize a presumptive delegation of responsibility for workplace safety from the hirer to the independent contractor, and a concomitant

6

delegation of duty. We next consider (in pt. II.B., *post*) the applicability of the nondelegable duties doctrine under which certain duties *may not* be delegated to an independent contractor. We find that doctrine inapplicable here, and we therefore conclude that an independent contractor's hirer implicitly delegates to that contractor its tort law duty, if any, to provide the employees of that contractor a safe workplace.**4**

**A.**

Our 1993 decision in *Privette*, *supra*, 5 Cal.4th 689, explained: "At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. [Citations.] Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for." ' " (*Id.* at p. 693.) That was the common law rule, but "[o]ver time, the courts . . . created so many exceptions to this general rule of

---

**4**     We are only discussing the delegation of any *tort law* duty the hirer might have. The concurring opinion argues that the delegation-of-duty issue we decide here is "at least partly a function of legislative intent," because the hirer's tort law duty, if any, is one based on a statute. (Conc. opn. of Werdegar, J., *post*, p. 4.) We see no indication, however, "that the Legislature intended to bring about a sweeping enlargement of the tort liability of those hiring independent contractors by making them civilly liable for Cal-OSHA or other safety violations resulting in injuries to the contractors' employees." (*Madden v. Summit View, Inc.* (2008) 165 Cal.App.4th 1267, 1280.) We agree that US Airways's tort law duty, if any, to Aubry's employees is one derived by the courts from a statute. Nevertheless, it remains a *tort law* duty, and whether it is delegable is a common law question. Here, the statute only comes into play by way of the common law doctrine that permits courts to use a statute to establish the existence of a tort law duty of care. (See, e.g., *Elsner v. Uveges*, *supra*, 34 Cal.4th at p. 927; *Clinkscales v. Carver* (1943) 22 Cal.2d 72, 75.)

nonliability that ' " 'the rule [came to be] primarily important as a preamble to the catalog of its exceptions.' " ' " (*Ibid*.)  *Privette* began limiting those exceptions.

In *Privette*, *supra*, 5 Cal.4th 689, a property owner hired a roofing company to install a new roof, and an employee of the roofing company was burned when attempting to carry a bucket of hot tar up a ladder.  At issue was the "peculiar risk" exception to the general rule of nonliability.  The peculiar risk exception allows lawsuits against those who hire contractors, if the work is "likely to create . . . a peculiar risk of physical harm to others unless special precautions are taken . . . ." (Rest.2d Torts, § 416.)  In this context, the phrase "peculiar risk" is used to mean a risk that is particular to the situation, not a risk that is odd or weird.  (*Privette*, at p. 695.)  The peculiar risk doctrine ensured that "a landowner who chose to undertake inherently dangerous activity on his land [c]ould not escape liability for injuries to others simply by hiring an independent contractor . . . ." (*Id*. at p. 694.) The rule "fairly allocated [the risk of injury] to the person for whose benefit the job was undertaken," thereby promoting workplace safety and ensuring compensation for "innocent third parties" injured by such work.  (*Ibid*.)

At first, the peculiar risk doctrine permitted only lawsuits by injured neighbors or innocent bystanders, not lawsuits by injured employees of the independent contractor hired to do the work.  Eventually, however, this court expanded the doctrine to include the latter type of suits.  (See *Woolen v. Aerojet General Corp.* (1962) 57 Cal.2d 407, 410–411 (*Woolen*); *Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 255 (*Van Arsdale*).)

In *Privette*, *supra*, 5 Cal.4th 689, we changed course and overruled *Woolen*, *supra*, 57 Cal.2d 407, and its progeny.  (*Privette*, *supra*, at p. 702, fn. 4.)  We noted that work-related injuries are compensable under our state's Workers' Compensation Act (§ 3200 et seq.).  (*Privette*, *supra*, at pp. 696–698.)  Moreover, that act affords " 'the exclusive remedy . . . for injury or death of an employee' "

against an employer who obtains workers' compensation insurance coverage. (*Id.* at p. 697.) In light of that limitation on the independent contractor's liability to its injured employee, *Privette* concluded that it would be unfair to permit the injured employee to obtain full tort damages from the hirer of the independent contractor. That was especially so because (1) the hirer likely paid indirectly for the workers' compensation insurance as a component of the contract price (*id.* at pp. 698–699), (2) the hirer has no right to reimbursement from the contractor even if the latter was primarily at fault (*id.* at p. 701, citing § 3864), and (3) those workers who happen to work for an independent contractor should not enjoy a tort damages windfall that is unavailable to other workers (*Privette*, *supra*, at pp. 699–700). We further noted that workers' compensation serves the same policies as the peculiar risk doctrine: It ensures the availability of compensation to injured employees, spreads the risk created by a contractor's work to those who benefit from the work, and encourages workplace safety. (*Id.* at p. 701.)

We next discussed the peculiar risk doctrine in *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 (*Toland*), in which we considered whether our holding in *Privette*, *supra*, 5 Cal.4th 689, applied when the hirer of the independent contractor failed to specify as part of the contract that the contractor should take special precautions to avert the peculiar risk. We noted that the hirer "has *no* obligation to specify the precautions an independent hired contractor should take for the safety of *the contractor's employees*" and "[a]bsent an obligation, there can be no liability in tort." (*Toland*, *supra*, at p. 267, original italics.) We also said that subjecting those who hire contractors to peculiar risk liability in such circumstances would negate their "right to delegate to independent contractors the responsibility of ensuring the safety of their own workers." (*Id.* at p. 269.) Thus, in *Toland*, we recognized the principle of delegation of duty as a rationale for our decision.

In 2002, we further refined those principles in *Hooker*, *supra*, 27 Cal.4th 198, holding that an independent contractor's employee can sometimes recover in tort from the contractor's hirer if the hirer retained control of the contracted work and " 'fail[ed] to exercise his control with reasonable care . . . .' " (*Id.* at p. 206, quoting Rest.2d Torts, § 414.) We noted that our holding in *Privette*, *supra*, 5 Cal.4th 689, was based on the principle that the hirer of an independent contractor generally has " ' " 'no right of control as to the mode of doing the work contracted for . . . .' " ' " (*Hooker*, *supra*, at p. 213, italics omitted.) We held in *Hooker* that the hirer cannot be liable "merely because [it] retained the ability to exercise control over safety at the worksite," but that it is fair to make the hirer liable if it "*exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee." (*Id.* at p. 210.)

Thereafter, our 2005 decision in *Kinsman*, *supra*, 37 Cal.4th 659, stressed the "framework of delegation" (*id.* at p. 671) to explain our holdings in *Privette*, *supra*, 5 Cal.4th 689, *Toland*, *supra*, 18 Cal.4th 253, and *Hooker*, *supra*, 27 Cal.4th 198. Those decisions, we observed, were grounded on a common law principle "that when a hirer delegated a task to an independent contractor, it in effect delegated responsibility for performing that task safely, and assignment of liability to the contractor followed that delegation." (*Kinsman*, *supra*, at p. 671.) For "policy reasons," *Kinsman* noted, "courts have severely limited the hirer's ability to delegate responsibility [to a contractor] and escape liability" to a bystander who is injured by the contractor's negligence. (*Ibid.*) But, *Kinsman* pointed out, if the injured party is the contractor's employee, and therefore entitled to workers' compensation benefits, those policy concerns do not apply. Hence, *Kinsman* said, a hirer is presumed "to delegate to an independent contractor the duty to provide the contractor's employees with a safe working environment." (*Ibid.*)

10

Most recently, in *Tverberg v. Fillner Construction, Inc*. (2010) 49 Cal.4th 518, we again focused on delegation of duty as an important principle underlying *Privette*, *supra*, 5 Cal.4th 689, and its progeny. *Tverberg* held that an independent contractor's hirer is not liable in tort even if the contractor *himself*, rather than the contractor's *employee*, is the one that is injured in the workplace. (*Tverberg*, *supra*, at pp. 528–529.) Although the contractor in *Tverberg* was not entitled to workers' compensation benefits, his claim against the hirer nevertheless failed because of the hirer's presumed delegation to the contractor of responsibility for workplace safety. (*Id.* at pp. 527–528.) The independent contractor, *Tverberg* said, "has authority to determine the manner in which inherently dangerous . . . work is to be performed, and thus assumes legal responsibility for carrying out the contracted work, including the taking of workplace safety precautions." (*Id.* at p. 522.)

The *Privette* line of decisions discussed above establishes that an independent contractor's hirer presumptively delegates to that contractor its tort law duty to provide a safe workplace for the contractor's employees. At issue here is whether the hirer can be liable to the contractor's employees for workplace injuries allegedly resulting from the hirer's failure to comply with safety requirements of Cal-OSHA and its regulations. That raises the question whether the tort law duty, if any, to comply with Cal-OSHA and its regulations for the benefit of an independent contractor's employees is nondelegable, an issue we discuss below.

### B.

The nondelegable duties doctrine prevents a party that owes a duty to others from evading responsibility by claiming to have delegated that duty to an independent contractor hired to do the necessary work. The doctrine applies when the duty preexists and does not arise from the contract with the independent contractor. (See *Eli v. Murphy* (1952) 39 Cal.2d 598, 600; *Knell v. Morris* (1952)

11

39 Cal.2d 450, 456.) In *Maloney v. Rath* (1968) 69 Cal.2d 442 (*Maloney*), for example, this court held that car owners cannot delegate their duty to ensure that their cars have working brakes. Hence, an owner cannot avoid liability for an accident by arguing that the mechanic hired to inspect the brakes failed to discover the brake problem. (*Id.* at pp. 446–447.)

After our 2002 decision in *Hooker*, *supra*, 27 Cal.4th 198 (in which we allowed actions in tort against an independent contractor's hirer if the hirer retained control over the work and exercised that control negligently, thereby affirmatively contributing to the worker's injury), several Courts of Appeal have concluded that the hirer's statutory or regulatory duties constitute retained control if those duties are nondelegable. The courts disagree, however, about the effect of a breach. Some courts — including the Court of Appeal here — have held that the breach of a nondelegable statutory or regulatory duty can, by itself, create a triable issue as to whether the hirer "*affirmatively* contributed" (*Hooker*, at p. 210) to the injury of the independent contractor's employee. (*Padilla v. Pomona College* (2008) 166 Cal.App.4th 661, 672; *Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137, 147; *Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 295, 301.) Other courts have held that if the breach is merely an omission, that breach alone cannot qualify as the "affirmative[] contribut[ion]" required for liability under *Hooker*, *supra*, 27 Cal.4th at page 210. (*Madden v. Summit View, Inc.*, *supra*, 165 Cal.App.4th at pp. 1279–1280; *Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1344, 1348.)

These cases are inapposite here because we reject the premise that the tort law duty, if any, that a hirer owes under Cal-OSHA and its regulations to the employees of an independent contractor is nondelegable. When in this case defendant US Airways hired independent contractor Aubry to maintain and repair the conveyor, US Airways presumptively delegated to Aubry any tort law duty of

12

care the airline had under Cal-OSHA and its regulations to ensure workplace safety for the benefit of Aubry's employees. The delegation — which, as noted on page 11, *ante,* is implied as an incident of an independent contractor's hiring — included a duty to identify the absence of the safety guards required by Cal-OSHA regulations and to take reasonable steps to address that hazard.

As discussed earlier (pt. II.A., *ante*), *Privette*, *supra*, 5 Cal.4th 689, and its progeny recognize a presumption that an independent contractor's hirer delegates to that contractor the responsibility to perform the specified work safely. The policy favoring "delegation of responsibility and assignment of liability" is very "strong in this context" (*Kinsman*, *supra*, 37 Cal.4th at p. 671), and a hirer generally "has no duty to act to protect the [contractor's] employee when the contractor fails in that task . . ." (*id.* at p. 674).

Nevertheless, the Court of Appeal here held that defendant US Airways could not delegate to independent contractor Aubry the tort law duty, if any, the airline owed to Aubry's employees to ensure that the conveyor met Cal-OSHA safety standards. The Court of Appeal quoted our comment — made in a decision some 25 years before *Privette*, *supra*, 5 Cal.4th 689 — that the category of nondelegable duties includes "the duty of employers and suppliers to comply with the safety provisions of the Labor Code." (*Maloney*, *supra*, 69 Cal.2d at p. 447.) *Maloney*, which did not involve workplace safety, based its nondelegable duty analysis on our then recent decision in *Van Arsdale*, *supra*, 68 Cal.2d 245, which did involve workplace safety.

In *Van Arsdale*, *supra*, 68 Cal.2d 245, a city hired an independent contractor and expressly delegated to the contractor the responsibility for the safety of the contractor's workers. This court held that the city "had a nondelegable duty to exercise due care," and it "could not avoid [this] duty by hiring an independent

13

contractor." (*Id.* at p. 255.)  Therefore, *Van Arsdale* concluded, an injured employee of the contractor could sue the city.

In holding the city's tort law duty to be nondelegable, *Van Arsdale* relied on the peculiar risk doctrine.  (*Van Arsdale*, *supra*, 68 Cal.2d at pp. 253–254.)  But as already discussed (see pp. 7–9, *ante*), our 1993 decision in *Privette*, *supra*, 5 Cal.4th 689, rejected application of the peculiar risk doctrine in the context of tort actions by employees of independent contractors, and it overruled *Van Arsdale*.  (*Privette*, at pp. 696, 702, fn. 4.)  Therefore, *Van Arsdale* is no help to plaintiffs here, and neither is our statement in *Maloney*, *supra*, 69 Cal.2d at page 447, which was based on *Van Arsdale*.

In trying to fit this case within the nondelegable duties doctrine, the Court of Appeal here distinguished between those Cal-OSHA requirements that arise from the work performed by the independent contractor and those that predate the contractor's hiring and apply to the hirer "by virtue of [its] role as property owner." In the view of the Court of Appeal, the latter requirements are nondelegable. Conversely, tort law duties that "only exist because construction or other work is being performed" can be delegated to the contractor hired to do the work.  We acknowledge the distinction, but for the reasons given below, we conclude that the Court of Appeal did not apply the distinction correctly.

Before hiring independent contractor Aubry, defendant US Airways owed *its own* employees a duty to provide a safe workplace.  We do not suggest that defendant could delegate *that* preexisting duty to Aubry (such that defendant could avoid liability if the conveyor had injured *defendant's own* employee).  But under the definition of "employer" that applies to California's workplace safety laws (see § 6304), the employees of an independent contractor like Aubry are not considered to be the hirer's own employees, and the issue here is whether defendant US Airways implicitly delegated to contractor Aubry the tort law duty, if

14

any, that it had to ensure workplace safety *for Aubry's employees*. The latter duty did not predate defendant's contract with Aubry; rather, it arose out of the contract. Any tort law duty US Airways owed to Aubry's employees only existed because of the work (maintenance and repair of the conveyor) that Aubry was performing for the airline, and therefore it did not fall within the nondelegable duties doctrine.

The policy favoring delegation in this case is bolstered by the same factors we considered persuasive in *Privette*, *supra*, 5 Cal.4th 689. (See pp. 8–9, *ante*.) *Privette* noted that the cost of workers' compensation insurance for an independent contractor's employees is presumably included in the contract price the hirer pays to the contractor, and therefore the hirer indirectly pays for that insurance. (*Privette*, at p. 699.) *Privette* further noted that workers' compensation guarantees compensation for injured workers, "spreads the risk created by the performance of dangerous work to those who . . . benefit from such work," and "encourages industrial safety." (*Id.* at p. 701.) Also, in light of the limitation that the workers' compensation law places on the independent contractor's liability (shielding the latter from tort liability), it would be unfair to permit the injured employee to obtain full tort damages from the *hirer* of the independent contractor — damages that would be unavailable to employees who did not happen to work for a hired contractor. This inequity would be even greater when, as is true here, the independent contractor had sole control over the means of performing the work. (See *id.* at pp. 698–700.) In sum, we see no reason to limit our holding in *Privette* simply because the tort law duty, if any, that the hirer owes happens to be one based on a statute or regulation.

Accordingly, plaintiffs here cannot recover in tort from defendant US Airways on a theory that employee Verdon's workplace injury resulted from defendant's breach of what plaintiffs describe as a nondelegable duty under Cal-

15

OSHA regulations to provide safety guards on the conveyor.  Hence, the Court of Appeal erred in reversing the trial court's grant of summary judgment for defendant.

## DISPOSITION

The judgment of the Court of Appeal is reversed.


                                            KENNARD, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
CHIN, J.
CORRIGAN, J.
JOHNSON, J.*

---

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

## CONCURRING OPINION BY WERDEGAR, J.

I agree with the majority that defendant US Airways, Inc., is entitled to summary judgment. I do not agree with the majority's reasoning.

## I

We originally granted review to resolve a conflict between various divisions of the Court of Appeal concerning nondelegable duties. Decisions of this court beginning with *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) generally prevent employees who are injured at work from suing the person who hired their employer,[1] subject to certain exceptions.[2] Under one of those exceptions, liability can still exist when the injury was caused by the hirer's breach of a nondelegable duty articulated in a safety statute or regulation.[3] Courts

---

[1] E.g., *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1238; and *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 267.

[2] E.g., *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 674-675 (hirer fails to warn of latent or concealed hazardous condition); *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 225 (hirer furnishes unsafe equipment); and *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 210-212 (hirer retains control and affirmatively contributes to injury).

[3] E.g., *Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137, 147-149 (industry safety order for elevated billboards); and *Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 296-298 (fire code provision concerning fire extinguishers).

have differed, however, on the question whether liability can be predicated simply on the hirer's passive omission to comply with a such a duty, or whether liability also requires a showing that the hirer made some additional, affirmative contribution to the injury.[4] The former view is somewhat closer to strict liability, the latter less so. It was to resolve this conflict that we granted review.

The Court of Appeal, ostensibly taking the former view but arguably moving further in the direction of strict liability, concluded defendant's failure to comply with regulations requiring safety guards on conveyor belts (Cal. Code Regs., tit. 8, §§ 3999, 4002) created a potential for liability justifying the case's submission to a jury, even though no admissible evidence showed how the accident had occurred. Anthony Verdon, the injured employee, claimed not to know how his arm had become caught in the machine. Immediately after the accident, Verdon's supervisor and coworker filed incident reports asserting that Verdon had violated safety rules by inserting his hand into the machinery to remove debris without first turning it off. Later, however, the same employees signed declarations repudiating their reports, stating they had not witnessed the accident or discussed it with Verdon and had instead based their reports on "a guess as to what may have caused the accident." The superior court excluded for

---

[4] Compare *Evard v. Southern California Edison*, *supra*, 153 Cal.App.4th 137, 147 (passive omission suffices); and *Barclay v. Jesse M. Lange Distributor, Inc.*, *supra*, 129 Cal.App.4th 281, 298 (same); with *Madden v. Summit View, Inc.* (2008) 165 Cal.App.4th 1267, 1280 (other affirmative contribution required); *Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1352 (same); and *Park v. Burlington Northern Santa Fe Railway Co.*, *supra*, 108 Cal.App.4th 595, 610 (same).

2

lack of foundation the only other evidence concerning causation — an accident reconstruction expert's opinion that safety guards would have prevented the accident, based on supposed deposition testimony that turned out not to exist. On this record, the superior court properly held that no evidence raised a triable issue of fact as to causation and thus granted summary judgment for defendant. This ruling was correct no matter which of the competing rules one favors, because the hirer's failure to comply with a nondelegable duty, in order to create liability, must still be a proximate cause of the injury. (E.g., *Madden v. Summit View, Inc.*, *supra*, 165 Cal.App.4th 1267, 1280-1281.) This essential principle of tort law disposes of the case before us.

## II

In concluding summary judgment for defendant was proper, the majority does not answer the specific question about nondelegable duties that prompted us to grant review. Instead, addressing a different question and adopting a rule broader than any party has proposed, the majority holds that an employer's duties under the California Occupational Safety and Health Act of 1973 (Cal-OSHA) (Lab. Code, § 6300 et seq.)[5] and the regulations issued under its authority are delegable and, moreover, are presumptively delegated to independent contractors. In so holding, the majority treats Cal-OSHA statutes and regulations differently, and less deferentially, than other laws imposing safety obligations on actors subject to governmental oversight — a category of laws that has long been considered to impose nondelegable duties for purposes of tort law. (See generally

---

[5]    All further citations to statutes are to the Labor Code, except as noted.

3

*Maloney v. Rath* (1968) 69 Cal.2d 442, 446-448.) Given the factual record and the manner in which this case has been presented, I question whether it offers an appropriate occasion for such a holding. Moreover, the holding may well be wrong for reasons the majority does not consider.

Whether a person upon whom the Legislature has imposed the duty to maintain a safe workplace (§ 6400, subd. (a)) may delegate that duty ought to be at least partly a function of legislative intent. Implicitly recognizing this, the majority attempts to claim for its holding — if not legislative authority — at least legislative neutrality. "Not present here," the majority writes, "is a situation in which the relevant statutes or regulations indicate an intent to limit the application of *Privette*, *supra*, 5 Cal.4th 689, or preclude delegation of the tort law duty, if any, that the hirer owes to the contractor's employees." (Maj. opn., *ante*, at p. 2, fn. 1.)

To the contrary, nondelegability is the clear, unavoidable import of section 6400, subdivision (b), which confirms that Cal-OSHA authorizes the DOSH to issue citations to employers at multiemployer worksites when an employee has been exposed to a hazard "in violation of any requirement enforceable by the [DOSH]," "regardless of whether their own employees were exposed to the hazard." The list of employers who may be cited for hazards endangering the employees of other employers includes, among others, "[t]he employer who actually created the hazard" (*id.*, subd. (b)(2)) and "[t]he employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, which is the employer who had the authority for ensuring that the hazardous condition is corrected" (*id.*, subd. (b)(3)). While the most common multiemployer worksite is perhaps the construction site, the statute expressly covers "both construction and nonconstruction" worksites. (*Id.*, subd. (b).) That

4

the employer's duties under these circumstances extend to the employees of other employers is necessarily implicit in the statute, as no citation can logically issue unless a duty has been breached. A contrary interpretation would defeat the statute's purpose.

The statutory language addressing multiemployer worksites (§ 6400, subd. (b)) is part of the statute that articulates the fundamental duty of employers to provide a safe workplace (*id.*, subd. (a)) and thus speaks at the same high level of authority. The 1999 act that added this language to the Labor Code (Stats. 1999, ch. 615, § 4, pp. 4338-4339) also added the language already mentioned (§ 6304.5) making clear that Cal-OSHA statutes and regulations are admissible to prove negligence in tort actions (Stats. 1999, ch. 615, § 2, p. 4337) and *deleted* language that previously had barred the use of Cal-OSHA statutes and regulations in tort actions "*except as between an employee and his own employer*" (former § 6304.5, as added by Stats. 1971, ch. 1751, § 3, p. 3780, italics added; see *Elsner v. Uveges* (2004) 34 Cal.4th 915, 930-931 (*Elsner*)). Considered together, the 1999 amendments leave no doubt that the Legislature understood and intended that the employer's Cal-OSHA duties at multiemployer worksites would extend not just to the employer's own employees, but also to those of other employers. Based on the 1999 amendments, we unanimously concluded in *Elsner* that "plaintiffs may use Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation or statute, *whether the defendant is their employer or a third party*." (*Elsner*, at pp. 935-936, italics added.)

Ignoring the 1999 multiemployer worksite statute (§ 6400, subd. (b)), the majority suggests the Legislature's intent to permit delegation of Cal-OSHA responsibilities can be inferred from an earlier statute defining an employer as "[e]very person . . . which has any natural person in service." (§ 3300, subd. (c);

5

see § 6304 [referring to § 3300], as amended by Stats. 1971, ch. 1751, § 2, p. 3780.) The definition will not bear the weight the majority would place upon it. The more recent enactment concerning multiemployer worksites operates not through the legal fiction that an employer *employs* a third party's employees (cf. maj. opn., at p. 2), but instead by expressly recognizing that employers in shared worksites owe duties to the employees of other employers. For the same reason, it is of no consequence that judicial decisions relying on a former definition of employer to reach a similar conclusion (e.g., *De Cruz v. Reid* (1968) 69 Cal.2d 217, 228-229; see maj. opn., *ante*, at p. 5) may have prompted the Legislature to adopt the present definition (§§ 3300, 6304). The duties recognized in the multiemployer worksite statute (§ 6400, subd. (b)) do not in any way depend on the definition of employer.

To observe that an employer subject to Cal-OSHA has violated a statutory or regulatory duty to an independent contractor's employee certainly does not suffice, without further analysis, to establish liability in tort for any injuries the employee may have suffered as a result. But *the duty's existence* is the essential starting point of the analysis. As explained, Cal-OSHA duties play a role in negligence cases because of section 6304.5, which provides that "[s]ections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation." In other words, Cal-OSHA statutes and regulations are admissible to show negligence per se in tort actions (see Evid. Code, § 669; *Elsner*, *supra*, 34 Cal.4th 915, at pp. 927-928, 935-936) and are subject for this purpose to judicial notice (see Evid. Code, § 452; *Elsner*, at p. 927). Evidence Code section 669, which codifies the common law doctrine of negligence per se (*Elsner*, at p. 927), does not negate or repeal the doctrine of

6

nondelegable duties (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 298).

The plain language of Evidence Code section 669 applies without any difficulty when an employer's violation of a Cal-OSHA provision at a multiemployer worksite causes injury to another employer's employee. More specifically, the employer violating the regulation has "violated a statute . . . or regulation of a public entity," the violation has "proximately caused . . . injury to a person," the injury has "resulted from an occurrence of the nature which the statute . . . or regulation was designed to prevent," and "[t]he person suffering . . . the injury . . . was one of the class of persons for whose protection the statute . . . or regulation was adopted." (Evid. Code, § 669, subd. (a)(1)-(4)). Finally, at a multiemployer worksite, section 6400, subdivision (b), establishes that the injured employee "was one of the class of persons for whose protection the . . . regulation was adopted" (Evid. Code, § 669, subd. (a)(4)).

As the majority correctly observes (*ante*, at p. 2, fn. 1), the Legislature has not expressly addressed the interaction between Cal-OSHA and the rule of *Privette*, *supra,* 5 Cal.4th 689. But the Legislature has had no reason to do so because, until today, this court's decisions applying and extending that rule have concerned duties arising under the common law and not under Cal-OSHA. What matters for present purposes is that the Legislature *has* determined that the Cal-OSHA duties of employers at multiemployer worksites extend to the employees of other employers. (§ 6400, subd. (b).) I recognize that the Legislature's decision to place Cal-OSHA provisions on an equal footing with other statutes and regulations in the context of tort law (§ 6304.5) permits courts, at least in theory, to guide the use of such provisions in civil actions by applying applicable common law doctrines, insofar as those doctrines are consistent with the Legislature's intent in

7

creating the relevant duty. In contrast, to apply a common law doctrine like *Privette* in tort actions to selectively negate one aspect of an employer's Cal-OSHA duty (i.e., the employer's duty to other employers' employees), while enforcing other aspects of that duty (i.e., the employer's duty to its own employees; see maj. opn., *ante*, at p. 14), is plainly inconsistent with legislative intent.

In summary, to the extent delegability is a function of legislative intent, the majority does not convince me the Legislature intended to treat duties created by Cal-OSHA statutes and rules, unlike other regulatory safety duties, as delegable and presumptively delegated whenever the person upon whom the Legislature has imposed such a duty hires an independent contractor. A rule that threatens an erosive effect on workplace safety deserves a more solid grounding in legislative intent than a statutory definition of employer (§§ 3300, 6304; see maj. opn., *ante*, at pp. 2, 5) that, as explained, is not the provision in which the Legislature has addressed the scope of employers' duties in multiemployer worksites (see § 6400, subd. (b)). I thus do not join in the majority's analysis.

WERDEGAR, J.

8

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Seabright Insurance Company v. U.S. Airways, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 183 Cal.App.4th 219
**Rehearing Granted**

_____

**Opinion No.** S182508
**Date Filed:** August 22, 2011

_____

**Court:** Superior
**County:** San Francisco
**Judge:** Peter J. Busch

_____

**Counsel:**

England Ponticello & St. Clair, Barry W. Ponticello, Renee C. St. Claire and Nadine D. Y. Adrian for Plaintiff and Appellant.

The Arns Law Firm, Robert S. Arns, Jonathan E. Davis and Steven R. Weinmann for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Hodson & Mullin, Samuel C. Mullin; O'Mara & Padilla and Michael D. Padilla for Intervener and Appellant.

Dimalanta Clark, Lee W. Clark, Lisa A. Lenoci; Kenney & Markowitz, Stephan E. Kyle, Kymberly E. Speer and Elizabeth D. Rhodes for Defendant and Respondent.

Archer Norris, Gary Watt; and Nick Cammarota for The California Building Industry Association as Amicus Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, David M. Axelrod and Stephen E. Norris for Fillner Construction, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Murphy, Pearson, Bradley & Feeney and William A. Munoz for Air Transport Association of America, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Barry W. Ponticello
England Ponticello & St. Clair
701 B Street, Suite 1790
San Diego, CA  92101-8104
(619) 255-6450

Michael D. Padilla
O'Mara & Padilla
12770 High Bluff Drive, Suite 200
San Diego, CA  92130
(858) 481-5454

Kymberly E. Speer
Kenney & Markowitz
255 California Street, Suite 1300
San Francisco, CA  94111
(415) 397-3100

Gary A. Watt
Archer Norris
2033 North Main Street, Suite 800
Walnut Creek, CA  94596-3759
(925) 930-6600