Filed 1/15/16  Kolodzik v. Advanced Cargo Services CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BREANNA LYNN KOLODZIK et al., | B258289 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. TC026356) |
| v. | |
| ADVANCED CARGO SERVICES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, William P. Barry, Judge.  Reversed.

The Lawyers Group, Inc., Stephen D. Counts for Plaintiffs and Appellants.

Yukevich | Cavanaugh, Todd A. Cavanaugh, Nina J. Kim for Defendant and Respondent Advanced Cargo Services Corp.

Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr.; Daniels, Fine, Israel, Schonbuch & Lebovits, Michael Schonbuch, Anthony C. Kohrs for Defendant and Respondent Advanced Logistics Management, Inc.

Snipper, Wainer & Markoff, Maurice Wainer for Defendant and Respondent Pacifica Chemical, Inc.

## INTRODUCTION

In a fifth amended complaint, plaintiffs and appellants Breanna Lynn Kolodzik and Brittenee Wimbish (plaintiffs), through their guardian ad litem, Cathy Huston, brought an action for the wrongful death of their father, Charles Kolodzik (Charles), against defendants and respondents Advanced Cargo Services, Corp. (ACSC), Advanced Logistics Management, Inc. (ALMI), and Pacifica Chemical, Inc. (Pacifica) (defendants). The trial court sustained defendants' demurrers to the fifth amended complaint without leave to amend and plaintiffs appeal. We reverse.

## BACKGROUND[1]

In their fifth amended complaint, plaintiffs allege that Pacifica was an owner of a parcel of real property in Rancho Dominguez, California (premises). ACSC and ALMI were tenants on the premises. Maq Hussain Shaikh, also an owner of the premises, hired Ervin Kolodzik (Ervin) and Charles to repair a damaged concrete wall on the premises.[2] To effect those repairs, a worker had to be elevated above the ground to drill holes in the wall. Prior to performing the work, Ervin discussed with Shaikh, ACSC, and ALMI the need to use "some kind of lift to elevate" a person to the height necessary to drill the holes. Shaikh, ACSC, and ALMI decided that renting a scissor lift would unduly increase the cost of the project and, instead, "instructed and authorized" Ervin and Charles to use one of the forklifts on the premises. Shaikh entered an agreement with defendants for defendants to provide Ervin and Charles the use of a forklift, bucket, and forklift front loader attachment that were in a reasonably safe condition.

When Ervin and Charles arrived at the premises to perform their work, they were provided with a forklift and bucket front loader attachment. Ervin operated the forklift

---

[1]    Plaintiffs sued other defendants in the fifth amended complaint. We omit references to those other defendants in our recitation of the facts.

[2]    In at least some of their prior amended complaints, plaintiffs alleged that Shaikh and/or Pacifica hired Ervin, doing business as K & K Construction and that K & K Construction employed Charles.

and front loader attachment while Charles stood on the front loader attachment elevated at a height of about 10 feet. As Charles stood on the front loader attachment, the front loader attachment detached from the forklift and it and Charles fell to the ground. Charles suffered fatal injuries.

In their fifth amended complaint, plaintiffs asserted an action against defendants for wrongful death that was premised on three counts: strict products liability (failure to warn) and products liability (negligence), which they asserted against ACSC and ALMI; and negligence, which they asserted against all defendants. In their negligence count, plaintiffs allege that defendants entered an agreement with Shaikh to provide Ervin and Charles with "the use of the subject forklift, bucket, and forklift front loader attachment, and their component parts and constituents in a reasonably safe condition."[3] The express purpose of that "forklift agreement," plaintiffs allege, was to provide a safe means by which Ervin and Charles could complete the work on the premises. By virtue of the "forklift agreement," plaintiffs allege, defendants owed a duty of care to Ervin and Charles "(a) to maintain and provide the forklift, bucket, and forklift front loader attachment, and their component parts and constituents in a safe condition; (b) to accurately represent the true nature of the condition of these items the forklift, bucket, and forklift front loader attachment, and their component parts and constituents in the exercise of due care; and (c) to warn Ervin . . . and Charles . . . as to the existence of any unsafe condition(s) therein." Plaintiffs allege that defendants breached their duty of care by negligently making or authorizing alterations or modifications to the forklift, bucket, and forklift front loader attachment; failing to provide the forklift, bucket, and forklift front loader attachment in a reasonably safe condition; and failing to warn Ervin and Charles that the forklift, bucket, and forklift front loader attachment were not in safe condition.

---

[3]    Because plaintiffs do not contend on appeal that the trial court erred in sustaining ACSC's and ACMI's demurrers to the products liability counts, we do not set forth the allegations in those counts.

Defendants demurred to the fifth amended complaint. The trial court sustained the demurrers without leave to amend. It ruled that under *Seabright Ins. Co. v. U.S. Airways, Inc.* (2011) 52 Cal.4th 590 (*Seabright*), it was the obligation of Charles's employer, K & K Construction, and not defendants to provide a safe work environment and a safe means of elevating Charles. The trial court reasoned that it would circumvent the holding in *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*)—i.e., the hirer of an independent contractor is not liable for injuries to the independent contractor's employees—to impose liability on defendants.

## DISCUSSION

Plaintiffs contend that the trial court erred in sustaining defendants' respective demurrers because negligent hirers and third parties may be held liable for injuries to an independent contractor's employees.[4] We agree.

### I. Standard of Review

"On appeal from a judgment after an order sustaining a demurrer, our standard of review is de novo. We exercise our independent judgment about whether, as a matter of law, the complaint states facts sufficient to state a cause of action. [Citations.] We view a demurrer as admitting all material facts properly pleaded but not contentions, deductions, or conclusions of fact or law. [Citation.]" (*Lin v. Coronado* (2014) 232 Cal.App.4th 696, 700.)

---

[4] Although plaintiffs set forth the abuse of discretion standard for reviewing the trial court's denial of leave to amend, they never address any claim of such an abuse in their opening brief. In light of our holding reversing the judgments, we would not have needed to reach the denial of leave to amend even if plaintiffs had properly addressed the issue.

4

## II.    Application of Relevant Principles

"Under the Workers' Compensation Act (hereinafter the Act), all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.' [Citations.]" (*Privette, supra,* 5 Cal.4th at pp. 696-697.)  Recovery under the Act "'is the exclusive remedy against an employer for injury or death of an employee.' [Citation.]" (*Id.* at p. 697.)  The Act's exclusivity clause, however, "does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury." (*Ibid.* citing Lab. Code, § 3852 [providing, in part, "The claim of an employee, including, but not limited to, any peace officer or firefighter, for [workers'] compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer"]; *Dafonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 598; *County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 873.)

In *Privette, supra,* 5 Cal.4th 689, the Supreme Court addressed the application of the peculiar risk doctrine, which imposes liability without fault, to injuries sustained by an independent contractor's employee.  It held, "When an employee of the independent contractor hired to do dangerous work suffers a work-related injury, the employee is entitled to recovery under the state's workers' compensation system.  That statutory scheme, which affords compensation regardless of fault, advances the same policies that underlie the doctrine of peculiar risk.  Thus, when the contractor's failure to provide safe working conditions results in injury to the contractor's employee, additional recovery from the person who hired the contractor—a nonnegligent party—advances no societal interest that is not already served by the workers' compensation system.  Accordingly, we join the majority of jurisdictions in precluding such recovery under the doctrine of peculiar risk." (*Id.* at p. 692.)  In *Seabright, supra,* 52 Cal.4th at page 594, the Supreme Court explained that "[b]y hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes *to the contractor's employees* to ensure the safety of the specific workplace that is the subject of the contract."

The holding in *Privette, supra,* 5 Cal.4th 689 does not bar an injured employee of an independent contractor from all recovery against the contractor's hirer, regardless of the hirer's actions. In a series of cases after *Privette, supra,* 5 Cal.4th 689, the Supreme Court explained *Privette's* reach. In *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*), the court held "that a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." The court reasoned that "if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Id.* at p. 212, fn. 3.) Subsequently, in *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 225 (*McKown*), the court explained that *Hooker* was consistent with *Privette*, "because the liability of the hirer in such a case is *not* in essence *vicarious or derivative* in the sense that it derives from the act or omission of the hired contractor. 'To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term.' (*Hooker, supra,* 27 Cal.4th at p. 212.)"

In *McKown, supra,* 27 Cal.4th at page 222, the Supreme Court held, "[A] hirer is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment *affirmatively contributes* to the employee's injury." In *McKown*, the plaintiff was an employee of an independent contractor that Wal-Mart Stores, Inc. (Wal-Mart) hired to install a sound system in its stores. (*Id.* at p. 223.) The sound systems were installed by running wires and installing speakers in the store ceilings. (*Ibid.*) Wal-Mart requested, but did not direct, that the contractor use Wal-Mart's forklifts to perform the work whenever possible. (*Ibid.*) The forklift that Wal-Mart employees provided the plaintiff for overhead work was equipped with a work platform and a four-foot extension to raise the platform. (*Ibid.*) A safety chain that was to secure the platform to the forklift or to the extension was missing. (*Ibid.*) While the plaintiff worked on the platform, the platform hit a ceiling pipe, disengaged from the extension, and fell 12 to 15 feet to the

ground with the plaintiff on it. (*Ibid.*) The court held, "when a hirer of an independent contractor, by negligently furnishing unsafe equipment to the contractor, affirmatively contributes to the injury of an employee of the contractor, the hirer should be liable to the employee for the consequences of the hirer's own negligence." (*Id.* at p. 225.) Quoting the Court of Appeal, the court stated that "it serves to underline the fact that, 'where the hiring party actively contributes to the injury by supplying defective equipment, it is the hiring party's own negligence that renders it liable, not that of the contractor.'" (*Ibid.*)

### A. ACSC's and ALMI's Negligence

Plaintiffs allege in the fifth amended complaint that defendants had a "legal and/or possessory interest in the subject forklift, bucket, and forklift front loader attachment, and their component parts." Plaintiffs further allege that to keep costs down, Shaikh, ACSC, and ALMI decided not to rent a scissor lift and instead "instructed and authorized" Ervin and Charles to use one of the forklifts on the premises—i.e., apparently that K & K Construction (Ervin) gratuitously could use the forklift. Through the gratuitous loan of the forklift and attachments, K & K Construction became the bailee of the forklift. (*Kite v. Coastal Oil Co.* (1958) 162 Cal.App.2d 336, 343 (*Kite*); *People v. Cannon* (1947) 77 Cal.App.2d 678, 689 ["A loan for use is a bailment for the benefit of the bailee. [Citation.]"]; Civ. Code, § 1884 ["A loan for use is a contract by which one gives to another the temporary possession and use of personal property, and the latter agrees to return the same thing to him at a future time, without reward for its use"].)

ACSC and ALMI's loan of the forklift and attachments to K & K Construction created a duty of care in ACSC and ALMI. If the use of the forklift and attachments solely benefited K & K Construction, then ACSC and ALMI were "obligated to reveal any defects or devices in the equipment which were known at the time of the borrowing." (*Kite, supra,* 162 Cal.App.2d at p. 343, citing Civ. Code, § 1893 ["The lender of a thing for use must indemnify the borrower for damage caused by defects or vices in it, which he knew at the time of lending, and concealed from the borrower"].) If the use of the forklift and attachments mutually benefited K & K Construction and ACSC and ALMI,

7

then ACSC and ALMI had a duty "to use reasonable care to ascertain that the equipment was safe and suitable for the purposes for which it permitted its use by [K & K Construction]. (Civ. Code, § 1955; *McNeal v. Greenberg*, 40 Cal.2d 740, 742 [255 P.2d 810]; 6 Am.Jur. 310 § 195.)" (*Kite, supra,* 162 Cal.App.2d at p. 343.) Accordingly, by their allegations that ALMI and ACSC provided the forklift and attachments to Ervin and Charles knowing that the equipment was not safe for its intended use without warning them of the defects in the equipment, plaintiffs properly pleaded a negligence count against ALMI and ACSC. (See *Kite, supra,* 162 Cal.App.2d at p. 343.)

Plaintiffs did not allege in their fifth amended complaint that ALMI and ACSC hired K & K Construction, which in turn employed Charles, the decedent. Thus, *Privette, supra,* 5 Cal.4th 689 and *Seabright, supra,* 52 Cal.4th 590 did not apply to ALMI and ACSC. ALMI and ACSC contend, however, that *Privette, supra,* 5 Cal.4th 689 and *Seabright, supra,* 52 Cal.4th 590 apply to them because they "stand in the shoes of K & K [Construction]'s hirer," and, thus, bar any recovery against them. They rely on *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52 (*Ruiz*) for the proposition that the *Privette* doctrine applies not only to entities that hire contractors, but also such entities' agents. (*Id.* at p. 62 ["the policies enunciated in *Privette* and *Hooker*[, *supra,* 27 Cal.4th 198] are equally applicable in determining the liability of the hirer's agent"].)

In *Ruiz, supra,* 130 Cal.App.4th 52, the court held that a hirer's agent who is not negligent is not vicariously liable under the peculiar risk doctrine for injuries to the independent contractor's employee. In that case, San Diego Gas & Electric hired Herman Weissker, Inc. as its contract administrator for distribution line construction projects. (*Id.* at p. 55.) ALMI and ACSC argue that by virtue of the "forklift agreement" pursuant to which they agreed to provide K & K Construction with "reasonably safe" equipment, they are like the non-hirer defendant in *Ruiz* that agreed to be "responsible for reviewing plans to ensure proper planning and feasibility and for monitoring the construction work for safety." (*Id.* at p. 55.) ALMI's and ACSC's reliance on *Ruiz* is unavailing because plaintiffs allege a theory of negligence against ALMI and ACSC apart from any breach of the "forklift agreement"—i.e., as set forth above, ALMI and ACSC

8

provided the forklift and attachments to Ervin (K & K Construction) and Charles knowing that the equipment was not safe for its intended use without warning them of the defects in the equipment.

### B.    Pacifica's Negligence

Plaintiffs did not allege in their fifth amended complaint that Pacifica hired K & K Construction or that K & K Construction employed Charles.  In prior amended complaints, they alleged that Shaikh and/or Pacifica hired K & K Construction, and that K & K Construction employed Charles, allegations they improperly attempted to plead around by omitting them from the fifth amended complaint.  (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 ["Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers . . ."].)  Thus, for purposes of our review, plaintiffs are held to their prior allegations that Pacifica hired K & K Construction which employed Charles.

Notwithstanding Pacifica's status as a hirer, *Privette, supra,* 5 Cal.4th 689 and *Seabright, supra,* 52 Cal.4th 590, do not prevent plaintiffs from establishing Pacifica's negligence.  Plaintiffs allege that Pacifica, along with ACSC and ALMI, negligently provided the forklift and attachments to Ervin and Charles knowing that they were not safe for their intended use and without warning them of the defects in the equipment. Those allegations properly plead a negligence theory under *McKown, supra,* 27 Cal.4th at page 225—i.e., that Pacifica negligently furnished unsafe equipment to K & K Construction, thus affirmatively contributing to Charles's death—that is unaffected by *Privette* and *Seabright*.

### C.    Issue Preclusion

Defendants contend that the trial court's earlier ruling on plaintiffs' motion to file a fourth amended complaint that *Privette, supra,* 5 Cal.4th 689 and *Seabright, supra,* 52 Cal.4th 590 were a bar to Shaikh's liability, which ruling plaintiffs did not appeal or

9

otherwise challenge, is entitled to issue preclusive effect in connection with the actions against the other defendants.  (See *Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 932-933 ["The doctrine of collateral estoppel, 'or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings."'  [Citation.]"].)  The doctrine of issue preclusion is inapplicable to this case, however, because, in general, that doctrine involves the preclusive effect of a final adjudication of an issue in a prior case on the attempted adjudication of the same issue in a subsequent case.  (See *DKN Holdings LLC v. Faeber* (2015) 61 Cal.4th 813, 824-825; *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1326-1327.)  Here, the prior ruling on behalf of Shaikh was made in this case.  Moreover, as we held above, *Privette* and *Seabright* do not apply to ACSC and ALMI as they were not hirers or a hirer's agents.

**DISPOSITION**

The judgments are reversed.  Plaintiffs are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.


We concur:



TURNER, P. J.



BAKER, J.


10