[No. A120050. First Dist., Div. Four. Jan. 26, 2012.]

JEFFREY TVERBERG et al., Plaintiffs and Appellants, v.
FILLNER CONSTRUCTION, INC., Defendant and Respondent.

COUNSEL

Clayeo C. Arnold, Kirk J. Wolden; and Leslie M. Mitchell for Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad, Stephen E. Norris; Vitale & Lowe and Robert Lawrence Bragg for Defendant and Respondent.

OPINION

**REARDON, Acting P. J.**—The trial court granted summary judgment to respondent Fillner Construction, Inc. (Fillner), and dismissed the personal injury action of appellants Jeffrey and Catherine Tverberg.[1] The Tverbergs appeal the judgment against them, contending that Fillner is liable for their injuries because of its (1) breach of a nondelegable regulatory duty and (2) negligent exercise of retained control. We conclude that a recent California Supreme Court opinion precludes liability on the first theory, but reverse the judgment on the Tverbergs' negligent exercise of retained control cause of action.

## I. FACTS[2]

This case came to us after the trial court granted Fillner's motion for summary judgment. Thus, we take the facts from the trial court record at the time that it ruled on that motion, and we review the decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. We liberally construe the evidence in support of the Tverbergs—the parties opposing summary judgment—and resolve doubts concerning the evidence in their favor. (See *Tverberg, supra*, 49 Cal.4th at p. 522.)

In 2006, Fillner was the general contractor on a project to expand a commercial fuel facility in Dixon. The project required construction of a metal canopy over some fuel-pumping units. Fillner contracted with subcontractor Lane Supply, which delegated the work to subcontractor Perry Construction Company (Perry). Perry hired Tverberg—an independent contractor—as foreperson of Perry's two-person crew to construct the canopy. Tverberg had more than 20 years' experience in structural steel construction and held a state contractor's license under the name of J.T. Construction—a sole proprietorship consisting exclusively of Tverberg.

Fillner also hired subcontractor Alexander Concrete Company to erect eight "bollards"—concrete posts intended to prevent vehicles from colliding with the fuel dispensers. On May 1, 2006—Tverberg's first day on the job—Alexander Concrete had already dug eight holes for the bollard footings. Each hole was four feet wide and four feet deep. The holes—marked with stakes and safety ribbon—were next to the area where Tverberg was to

---

[1] For convenience, all singular references to "Tverberg" in this opinion are to Jeffrey Tverberg.

[2] This summary of facts is based in part on those set out in the California Supreme Court's June 2010 decision in this matter. (*Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518 [110 Cal.Rptr.3d 665, 232 P.3d 656] (*Tverberg*).)

erect the metal canopy. The bollards had no connection to the building of the metal canopy—in fact, Tverberg had never seen bollard holes at a canopy installation site.

Tverberg asked Steve Richardson—Fillner's "lead man"—to cover the holes with large metal plates that were onsite, but Richardson said that he did not have the necessary equipment to do so that day. Richardson did have his crew use a tractor to flatten dirt that had been piled around the holes. Tverberg removed three or four stakes that marked the edges of some of the bollard holes.

The next day, with the bollard holes still uncovered, Tverberg began work on the canopy. He again asked Richardson to cover the holes, but Richardson did not do so. A short while later, as Tverberg walked from his truck toward the canopy, he fell into a bollard hole and was injured. His injuries also affected his relationship with his wife, appellant Catherine Tverberg.[3]

In July 2006, the Tverbergs filed a personal injury action against Fillner and Perry.[4] Tverberg alleged causes of action for negligence and premises liability; Catherine Tverberg pled a cause of action for loss of consortium. They sought recovery for physical and mental injuries and lost income under negligence and premises liability theories. It is not clear whether the complaint sought recovery under a peculiar risk theory. That theory became an issue in July 2007, when Fillner moved for summary judgment, asserting that it could not be held *vicariously* liable for Tverberg's injuries based on *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*). Fillner also asserted that it could not be held *directly* liable for negligence in failing to provide a safe workplace. The Tverbergs opposed the motion, contending only that Fillner had retained control over safety conditions at the jobsite and should be held *directly* liable for its failure to eradicate a known danger—the open bollard holes.

The trial court granted the motion for summary judgment, finding that Tverberg—as an independent contractor—could not hold general contractor Fillner *vicariously* liable on a peculiar risk theory.[5] It also rejected the

---

[3] Catherine Tverberg's loss of consortium claim turns on the validity of her spouse's injury claim. (See *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1067 [272 Cal.Rptr. 250].)

[4] Perry is a party to the underlying action, but did not obtain summary judgment and thus, is not a party to this appeal.

[5] The doctrine of peculiar risk is a judicially created exception to the common law rule that one hiring an independent contractor to perform inherently dangerous work is generally not liable to a third party for injuries resulting from that work. Once applicable only to bystanders and neighboring property owners, the doctrine has been expanded to include employees of independent contractors hired by a property owner to perform inherently dangerous work when the employee is injured at the jobsite. The doctrine allows injured persons to seek recovery

Tverbergs' contention that Fillner could be held *directly* liable for failing to cover the bollard holes. The trial court found that Tverberg had been aware of the danger that the open bollard holes posed, that he did not refuse to work around them, and that Fillner had never promised to cover the holes. Finding that Fillner had established a complete defense to the Tverbergs' action, the trial court entered judgment for Fillner in November 2007.

In 2008, we reversed the trial court's ruling, reasoning that the *Privette* doctrine did not bar recovery because Tverberg was an independent contractor rather than an employee covered by the state workers' compensation system. In 2010, the California Supreme Court reversed our decision, holding that an independent contractor hired by a subcontractor may not hold the general contractor *vicariously* liable on a peculiar risk theory for injuries arising from risks inherent in the nature of the location of the hired work over which the independent contractor has been granted control. (*Tverberg, supra,* 49 Cal.4th at pp. 521–522, 528–529.) The Supreme Court found that "[b]e-cause the bollard holes were located next to the area where Tverberg was to erect the metal canopy, the possibility of falling into one of those holes constituted an inherent risk of the canopy work." (*Id.* at p. 529.) Although it reversed our earlier ruling, the court remanded the case to us to resolve issues that we did not reach in our 2008 decision, "notably whether [Fillner] could be held *directly* liable on a theory that it retained control over safety conditions at the jobsite." (*Ibid.*)

In 2011, we issued our second decision in this matter, concluding that the Tverbergs were entitled to go to trial on their negligent exercise of retained control and breach of a nondelegable regulatory duty theories. (*Tverberg v. Fillner Construction, Inc.*[*] (Cal.App.).) The California Supreme Court— which was in the midst of deciding another breach of regulatory duty case—granted review of our second decision, too. Once it ruled in the pending case, the court transferred our case back to us with directions to vacate our 2011 decision and reconsider it in light of its new decision. (See *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590 [129 Cal.Rptr.3d 601, 258 P.3d 737] (*SeaBright*).) Accordingly, we now vacate our earlier ruling. The parties submitted supplemental briefs to consider matters arising since the time of our earlier decision. (See Cal. Rules of Court, rule 8.200(b).) We now reconsider our earlier decision.

---

from the hirer under a vicarious liability theory, so that the injured party need not depend on the solvency of the independent contractor for compensation for injuries. (*Privette, supra,* 5 Cal.4th at pp. 693–694; see *Tverberg, supra,* 49 Cal.4th at pp. 524–525.)

[*]Reporter's Note: Review granted on July 13, 2011, S192804, and cause transferred to Court of Appeal, First Appellate District, Division Four, with directions.

## II. BREACH OF NONDELEGABLE DUTY

■ Generally, when an independent contractor is injured in the workplace, the contractor cannot sue the party that hired the contractor to do the work. (*SeaBright, supra*, 52 Cal.4th at p. 594; see *Privette, supra*, 5 Cal.4th at p. 695.) In their earlier briefing, the Tverbergs contended that Fillner is liable for Tverberg's injuries on the ground that Fillner's conduct falls outside the *Privette* doctrine because it breached a nondelegable regulatory duty. They argued that Fillner was responsible for ensuring compliance with applicable safety regulations—most notably, the Cal-OSHA (California Occupational Safety and Health Act of 1973; Lab. Code, § 6300 et seq.) requirement that all pits be barricaded or securely covered. (See Lab. Code, § 6400, subd. (b); Cal. Code Regs., tit. 8, § 1542, subd. (a)(3).)

■ As the Tverbergs now concede, the California Supreme Court has rejected this legal theory. When a hirer delegates contracted work to an independent contractor, it also impliedly delegates its duty to provide a safe workplace to that contractor. In these circumstances, the hirer has no duty and the contractor may not recover from the hirer for his or her injuries. (*SeaBright, supra*, 52 Cal.4th at pp. 594, 597.) Applying these legal principles to the Tverbergs' case, Fillner delegated its obligation to comply with Cal-OSHA workplace regulations to Tverberg. (See *SeaBright*, at p. 600; *Tverberg, supra*, 49 Cal.4th at pp. 527–528.) Thus, the trial court properly granted Fillner's motion for summary judgment on the breach of regulatory duty theory of recovery.

## III. RETAINED CONTROL

### A. *Legal Principles*

■ The *Privette* peculiar risk doctrine imposes *vicarious* liability on a hirer, based on the negligence of an independent contractor, not that of the hirer. (*Tverberg, supra*, 49 Cal.4th at p. 525; *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 668–669 [36 Cal.Rptr.3d 495, 123 P.3d 931] (*Kinsman*); *Privette, supra*, 5 Cal.4th at p. 695 & fn. 2; see fn. 5, *ante*.) On appeal, the Tverbergs assert that Fillner is *directly* liable for their injuries because it retained control over the jobsite and itself negligently exercised that control in a manner that affirmatively contributed to Tverberg's injuries. Contending that they offered sufficient evidence of retained control and affirmative contribution to overcome a motion for summary judgment, the Tverbergs urge us to find that the trial court erred by granting summary judgment to Fillner on a retained control theory.

■ Generally, when an independent contractor is hired to perform inherently dangerous work, the contractor receives authority to determine how the work is to be performed and assumes a corresponding responsibility to see that the work is performed in a safe manner. This authority is *delegated* by the hirer, either directly or indirectly. (*Tverberg, supra*, 49 Cal.4th at p. 528; *Kinsman, supra*, 37 Cal.4th at p. 673.) If a hirer entrusts work to an independent contractor, but *retains* control over safety conditions at a jobsite and then negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, the hirer is liable for those injuries, based on its own negligent exercise of that retained control. (*Kinsman, supra*, 37 Cal.4th at p. 670; *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 206, 213 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*); see Rest.2d Torts, § 414, com. b, pp. 387–388.) Because the hirer actively *retains* control, it cannot logically be said to have *delegated* that authority.

■ Even so, a hirer is not liable to a contractor or a contractor's employee merely because it retains control over safety conditions. (*Hooker, supra*, 27 Cal.4th at p. 202.) The imposition of tort liability turns on whether the hirer exercised that retained control in a manner that *affirmatively contributed* to the injury. (*Kinsman, supra*, 37 Cal.4th at p. 670; *Hooker, supra*, 27 Cal.4th at pp. 202, 210–212.) An affirmative contribution may take the form of actively directing a contractor or an employee about the manner of performance of the contracted work. (*Kinsman, supra*, 37 Cal.4th at p. 670; *Hooker, supra*, 27 Cal.4th at p. 212, fn. 3.) When the employer directs that work be done by use of a particular mode or otherwise interferes with the means and methods of accomplishing the work, an affirmative contribution occurs. (*Hooker, supra*, 27 Cal.4th at p. 215; *Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1348 [68 Cal.Rptr.3d 177].) When the hirer does not fully delegate the task of providing a safe working environment but in some manner actively participates in how the job is done, the hirer may be held liable to the employee if its participation affirmatively contributed to the employee's injury. (*Kinsman, supra*, 37 Cal.4th at p. 671.)

■ By contrast, passively permitting an unsafe condition to occur rather than directing it to occur does not constitute affirmative contribution. (*Hooker, supra*, 27 Cal.4th at pp. 214–215; *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52, 65–67 [29 Cal.Rptr.3d 641].) The failure to institute specific safety measures is not actionable unless there is some evidence that the hirer or the contractor had agreed to implement these measures. (*Ruiz v. Herman Weissker, Inc., supra*, 130 Cal.App.4th at p. 66.) Thus, the *failure* to exercise retained control does not constitute an affirmative contribution to an injury. Such affirmative contribution must be based on a *negligent exercise* of control. (*Ibid.*) In order for a worker to recover on a retained control theory, the hirer must engage in some active participation. (*Hooker, supra*, 27 Cal.4th at p. 215.)

The most instructive retained control case is *Hooker*, in which a highway overpass was being constructed. When a crane used on the construction project was fully extended, it blocked access to other construction vehicles on the overpass. The crane operator retracted the crane, allowing the other vehicles to pass. When the crane operator then used the crane without reextending it, the crane tipped over, killing him. (*Hooker, supra*, 27 Cal.4th at p. 202.) The state Department of Transportation—the hirer of the independent contractor that employed the crane operator—*permitted* vehicles to use the overpass while the crane was being operated. Although the crane operator had to retract the crane in order to allow traffic to pass, the department was found not to have *directed* the crane operator to retract the crane in order to allow the movement of traffic. In these circumstances, the California Supreme Court held that the department did *not* affirmatively contribute to the crane operator's death. Instead, it had merely permitted use of the overpass while the crane was in operation. (*Id.* at pp. 202, 214–215.) With these key legal principles in mind, we evaluate whether the evidence offered by the Tverbergs meets these standards.[6]

## B. *Evidence of Affirmative Contribution*

In order to establish its right to summary judgment, Fillner must show that the Tverbergs cannot prevail on their personal injury claim. (Code Civ. Proc., § 437c, subd. (c).) For their part, the Tverbergs may overcome a summary judgment motion if they show that a triable issue of material fact exists that warrants a trial. (See, e.g., *Hooker, supra*, 27 Cal.4th at pp. 212, 215.) On appeal, the Tverbergs contend that a triable issue exists about whether Fillner retained control over the jobsite in such a manner that it affirmatively contributed to Tverberg's injuries.

■ The Tverbergs assert that Fillner's negligence affirmatively contributed to the injuries sustained, in several ways. They claim that Fillner's affirmative contribution is satisfied by its direction of another subcontractor to dig the bollard holes in the first place. These holes were in the area in which Tverberg was expected to erect the canopy, but were not needed for him to

---

[6] In its supplemental briefing, Fillner contends that *SeaBright* also precludes the Tverbergs' recovery on a retained control theory. We disagree. *SeaBright* found no evidence of affirmative contribution, but did not eliminate the retained control theory of recovery. (*SeaBright, supra*, 52 Cal.4th at pp. 595, 599; *Hooker, supra*, 27 Cal.4th at p. 213.) Our Supreme Court suggested that the Tverbergs might be entitled to reversal on the retained control theory of recovery in its 2010 decision in this matter. (See *Tverberg, supra*, 49 Cal.4th at p. 529.)

Fillner also asserts that a recent case decided by our division bars any recovery on a retained control theory. (See *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209 [132 Cal.Rptr.3d 913].) That decision is not a retained control case, but one based on premises liability for a preexisting hazardous condition. (See *id.* at pp. 1214–1219.) For that reason, its rulings are not relevant to our determination of the retained control issue that the Tverbergs raise.

complete his work. While the passive permitting of an unsafe condition to occur is not an affirmative contribution, the act of directing that it occur is active participation. (See *Hooker, supra,* 27 Cal.4th at pp. 214–215; *Ruiz v. Herman Weissker, Inc., supra,* 130 Cal.App.4th at pp. 65–67.) We agree that by ordering these holes to be created and requiring Tverberg to conduct unrelated work near them, Fillner's conduct may have constituted a negligent exercise of its retained control in a manner that could have made an affirmative contribution to Tverberg's injury.

The Tverbergs also contend that the affirmative contribution requirement is satisfied by Fillner's determination that there was no need to cover or barricade the bollard holes. Fillner's employee in charge of the jobsite testified that he concluded that the stakes and safety ribbon that were provided constituted sufficient worker protection. On a motion for summary judgment, we must construe the evidence in favor of the Tverbergs. (See *Tverberg, supra,* 49 Cal.4th at p. 522.) In our view, their evidence allows an inference that Fillner affirmatively assumed the responsibility for the safety of the workers near the bollard holes, and discharged that responsibility in a negligent manner, resulting in injury.

Third, the Tverbergs claim that the affirmative contribution is demonstrated by evidence that Fillner failed to cover the holes after Tverberg twice asked Fillner to do so. When Tverberg made his first request to cover the holes, Fillner's representative stated that equipment necessary to comply with this request was not available. The Tverbergs reason that this evidence raises an inference that Fillner intended to cover the bollard holes when the needed equipment became available. Thus, they claim, Fillner agreed to undertake a safety measure and did not do so. While this presents a closer case on the issue of affirmative contribution, we find that this evidence could allow a reasonable jury to infer that Fillner agreed to cover the holes and then failed to meet this responsibility. (See *Ruiz v. Herman Weissker, Inc., supra,* 130 Cal.App.4th at p. 66.)

█ The Tverbergs offered sufficient evidence of a triable issue on affirmative contribution to overcome a motion for summary judgment on a retained control theory of direct liability. (See, e.g., *Hooker, supra,* 27 Cal.4th at pp. 212, 215.) As we conclude that Fillner may be liable to the Tverbergs on a retained control theory, the trial court erred in granting its motion for summary judgment.

The judgment is reversed and the matter remanded to the trial court for further proceedings consistent with this decision.

Sepulveda, J., and Rivera, J., concurred.

A petition for a rehearing was denied February 27, 2012, and respondent's petition for review by the Supreme Court was denied April 11, 2012, S200624.