Filed 10/1/21  Torres v. Design Group Facility Solutions CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ISMAEL TORRES, JR., an incompetent Person, etc., | B308630 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC608065) |
| v. | |
| DESIGN GROUP FACILITY SOLUTIONS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Law Offices of Berglund & Johnson and Daniel W. Johnson for Plaintiff and Appellant.

Lynberg & Watkins, Michael J. Larin, Shant N. Nashalian; London Fischer, Jerome P. Doctors and Nicholas W. Davila for Defendant and Respondent.

————————————

Ismael Torres, Jr., sued Design Group Facility Solutions, Inc. (Design) for personal injuries after he fell through a skylight at a construction project. The trial court granted summary judgment in favor of Design, finding that the rule set forth in *Privette v. Superior Court* (1993) 5 Cal.4th 689 and its progeny barred Torres from recovery after he failed to present evidence that Design's negligence affirmatively contributed to his injuries. This is the second appeal in this matter. In our first opinion, we reversed the trial court's judgment, holding that Design could not bypass the procedural safeguards afforded to a party opposing summary judgment pursuant to Code of Civil Procedure[1] section 473c by moving for reconsideration under section 1008, subdivision (a). (*Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239.) Because those due process concerns are no longer present and Torres has failed to raise a triable issue of material fact, we affirm.

## BACKGROUND

Design was hired by Santa Monica Seafood Company (SMS) as the general contractor to renovate and expand its seafood processing facility. As part of the project, Design subcontracted with C&L Refrigeration (C&L) to install new refrigeration units. C&L in turn hired H.J. Vast (Vast) as a sub-subcontractor to do electrical work. Torres was an employee of Vast.

The renovation of the SMS facility required workers to be on the roof, which contained 111 skylights. The roof was roughly

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

divided into western and eastern sections by a pipe rack with the skylights on the western section closer together than the skylights on the eastern section. Design and C&L discussed the safety hazard posed by the skylights. To address the hazard, C&L created a safety plan. C&L required its workers to walk due west and noted that there would be delineators with caution tape in certain areas to indicate paths of travel. The plan also required workers to use several portable skylight barricades if any work took place closer than six feet from any skylight. C&L made the barricades available to other contractors if they were not being used by C&L's workers. Design also installed removable anchor points in certain areas to protect its workers from falling while they cut holes in the western section of the roof.[2]

Design and SMS agreed that Design would be solely responsible for and have control over all construction, means methods, techniques, sequences and procedures. Design had the right to inspect the subcontractors' work and to stop their work if it was done in an unsafe manner. Design also required subcontractors to make their own safety plans and to provide their own safety equipment. C&L agreed to provide a safe place to work for its employees and for the employees of its subcontractors and to comply with applicable laws and regulations and with Design's safety plan.

Design's construction manager, Martin Studley, was responsible for continuously monitoring jobsite safety and ensuring that subcontractors were using appropriate safety

---

[2] Anchor points allow workers to attach themselves to the roof with a harness and lifeline or lanyard.

3

equipment. However, his presence on the jobsite did not relieve any subcontractor of their duties and responsibilities for performing and coordinating work and exercising necessary health or safety precautions required by law.

On the date of the accident, Torres was on the eastern section of the roof, installing conduit and pulling wire. He was wearing a safety harness, but was not attached to an anchor point. A Vast employee who witnessed the accident said that Torres was walking on the eastern section of the roof, when he turned to say something over his shoulder and then tripped on the corner of the skylight. Torres crashed through the skylight and fell 33 feet.

Torres sued Design for damages as a result of his injuries. Design moved for summary judgment, arguing Torres's claims were barred under the doctrine articulated in *Privette v. Superior Court, supra,* 5 Cal.4th 689, which shields a hirer from liability for an independent contractor's workplace injuries.

The summary judgment hearing was continued for several months at Torres's counsel's request to conduct additional inspections and depositions. Before Torres filed his opposition, several witnesses were deposed, including Vast's project foreman, Raul Hernandez; C&L's safety coordinator, Mike Annesley; Torres's coworker who witnessed the accident, Michael Evanchock; and Torres.

The trial court initially denied Design's motion, finding that Studley's testimony was sufficient to raise a triable issue of material fact, specifically, his statement that Torres fell outside of the established pathway on the roof and that Studley would check to ensure the delineators marking the pathway were connected by tape. The trial court concluded that this testimony

4

created an inference that Design affirmatively exercised its control authority by establishing a walkway and periodically checking the safety delineators on site and that its negligence in doing so resulted in Torres's injury.

Design moved for reconsideration under section 1008, subdivision (a), submitting that it was unable to provide the trial court with testimony from those depositions taken after it filed its motion but before Torres filed his opposition. Design argued that the testimony from Torres, Hernandez, Evanchock, and Annesley showed that Design did not retain control over Torres's work, and, even if it retained control, Design did not affirmatively contribute to Torres's injuries. Design filed an attorney declaration with its motion and attached the relevant deposition excerpts but did not include an amended separate statement of undisputed material facts. The motion was a regularly noticed motion, allowing Torres approximately three weeks to file his opposition.

The new evidence submitted by Design included extensive testimony from Hernandez, who admitted that Design and C&L did not direct Vast or its employees how to do their work. Hernandez stated that Vast was aware that the skylights were a hazard and that Vast had its own safety plan for its workers performing work on the roof. Hernandez directed Vast employees to work on the eastern section of the roof because the skylights were closer to the pipe rack on the western section. Hernandez verbally communicated the safety plan to Vast employees and did not mark a path on the roof because he believed his verbal instructions were sufficient. Hernandez also admitted that he did not discuss with Design that Vast workers would be working on the eastern section of the roof and all of his communications

5

were strictly through C&L. He agreed that Design did not prevent or prohibit Vast from establishing its own pathway on the roof.

The trial court granted the motion to reconsider and summary judgment, finding that the new evidence established that there were no triable of issues of material fact on whether Design retained control over Torres's work or that Design contributed to Torres's injuries.

Torres appealed, arguing that the trial court erred in granting Design's motions for reconsideration and summary judgment and that there remained triable issues of material fact. We reversed the trial court's judgment on the grounds that Torres did not receive an adequate opportunity to respond to Design's new evidence supporting the motion for reconsideration. We did not address the merits of Design's motion for summary judgment.

On remand, Design moved again for reconsideration of the trial court's order denying summary judgment. This time, however, Design moved under section 1008, subdivision (b).[3] Design served the motion on Torres at least 75 days prior to the hearing and filed a separate statement of undisputed facts. The trial court granted Design's motion for reconsideration and granted summary judgment in its favor.

Torres appealed.

_____

[3] Design also moved for reconsideration under section 473c, subdivision (f)(2), which allows a party to move for summary judgment on the same issues that were previously denied if the party can establish a change in law or facts to support the reasserted issues.

6

## DISCUSSION

Torres raises two contentions on appeal. First, the trial court abused its discretion when it granted Design's second motion for reconsideration of its order denying summary judgment because Design's motion was based on facts known to Design before the summary judgment hearing. Second, there remained triable issues of material fact on whether Design was liable under the retained-control exception to the *Privette* doctrine. Both contentions are meritless.[4]

I.     The trial court did not abuse its discretion when it granted Design's motion for reconsideration.

Section 1008 allows a party to move the trial court to reconsider a prior order based upon new or different facts. The moving party must provide a " 'satisfactory explanation for the failure to produce [the] evidence at an earlier time.' " (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 689; § 1008.) We review the trial court's ruling on a motion for reconsideration for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

When Design moved for reconsideration, it explained to the trial court that it was unable to produce the evidence at an earlier time because the depositions were taken after it filed its

---

[4] On May 24, 2021, Design requested judicial notice of the reporter's transcript from the hearing on Design's first motion for reconsideration. Torres did not oppose the request. Design's request for judicial notice is granted. (Evid. Code, § 452, subd. (d).)

7

motion for summary judgment.[5]  Further, Design had agreed to two prior continuances of the summary judgment hearing to permit Torres to complete additional discovery.  The trial court granted the motion, finding Design's explanation satisfactory while acknowledging that there may have been other means to present the new evidence before the summary judgment hearing.  However, Torres provided no authority that would require Design to do so.

Torres contends this was an abuse of discretion, arguing that Design should have put these new facts in its reply to Torres's opposition, filed a supplemental brief, or requested a continuance of the summary judgment hearing to permit Design to amend its separate statement.  This contention misses the mark.  Torres cannot show that the trial court abused its discretion by offering alternative means for Design to present the new evidence before the summary judgment hearing.  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)  Thus, the fact that Design had other potentially appropriate options is insufficient to show error.  Nor has Torres cited to any authority that would require Design to present the new evidence in the manner Torres suggests here.  Design chose to move for reconsideration under section 1008, subdivision (b).  This is an

---

[5] Design also notes for the first time on appeal that it was unable to provide the testimony earlier because the subject witnesses were outside of its control.

appropriate means to request reconsideration of a prior ruling on summary judgment based on new facts so long as the moving party is not allowed to bypass the procedural safeguards under section 437c that protect the party opposing summary judgment. (*Torres v. Design Facility Solutions, Inc.*, *supra*, 45 Cal.App.5th 239, 243.) Moreover, unlike Torres's first appeal, where Design's initial motion for reconsideration was a regular noticed motion and did not include a separate statement, we are satisfied that Design complied with the 75-day notice and separate statement requirements of section 437c, giving Torres an adequate opportunity to respond.

Accordingly, we find no abuse of discretion.

II.    The trial court properly granted summary judgment in favor of Design

A.    *Standard of review*

Summary judgment is proper when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

"A defendant who moves for summary judgment bears the initial burden to show the action has no merit—that is, 'one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to [that] cause of action.' [Citation.] Once the defendant meets this initial burden of production, the burden shifts to the

9

plaintiff to demonstrate the existence of a triable issue of material fact. [Citation.] 'From commencement to conclusion, the moving party defendant bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law.' [Citation.] We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent. [Citation.] We consider all of the evidence the parties offered in connection with the motion, except that which the court properly excluded." (*Grotheer v. Escape Adventures, Inc.* (2017) 14 Cal.App.5th 1283, 1292–1293.)

B.     *The Privette doctrine*

Subject to certain exceptions, the *Privette* doctrine bars employees of independent contractors from recovering damages from the hirer of the contractor for workplace injuries. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594.) The reasoning is that, because workers' compensation generally provides the exclusive remedy for employees who are injured on the job, allowing the employee to recover from the contractor's hirer, who did not cause the injury, would unfairly subject the hirer to greater liability than that faced by the contractor who was negligent. (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 204 (*Hooker*).) Further, "[b]y hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes to the contractor's employees to ensure the safety of the specific workplace that is the subject of the contract." (*SeaBright Ins. Co.*, at p. 594, italics omitted.) This delegation includes any "duty

10

the hirer owes to the contractor's employees to comply with applicable statutory or regulatory safety requirements." (*Ibid.*)

The parties do not dispute that Design was the general contractor on the project, and that Design subcontracted with C&L, who in turn sub-subcontracted with Torres's employer, Vast. The agreement between Design and C&L required C&L to comply with all occupational health and safety regulations and to comply with Design's safety plan. C&L also agreed to provide a safe place to work for its employees and for the employees of its subcontractors. Vast also admitted that it came up with its own safety practices for its employees who would be working on the roof. Thus, Design has met its initial burden to show that the *Privette* doctrine bars Torres's claims. The burden then shifts to Torres to create a triable issue of material fact showing that an exception to *Privette* applies. (*Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 644.)

### C. *Retained-control exception*

Torres seeks to recover under the retained-control exception to *Privette*. This exception subjects the hirer to liability "if the hirer retained control over the contractor's work and exercised that control in a way that 'affirmatively contribute[d]' to the employee's workplace injury." (*SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.5th at p. 595.) For the exception to apply, Torres must show: (1) Design retained control over any part of the work; (2) Design negligently exercised that control; and (3) did so in a manner that affirmatively contributed to his injuries. (*Khosh v. Staples Construction Co., Inc.* (2016) 4 Cal.App.5th 712, 717.) Torres has failed to present evidence that would create a triable issue of fact with respect to whether

11

Design retained control over his work or that Design affirmatively contributed to his injuries.

To establish that Design retained control over Torres's work, he relies on Design's agreement with SMS that Design would be responsible for safety conditions on the jobsite and Studley's testimony that he would check to ensure there were delineators on the roof that were connected with tape or rope to mark the pathway. However, this evidence is insufficient to create an inference that Design retained control either generally or over the area where Torres fell on the eastern section of the roof. Design delegated responsibility for enacting the site safety plan to C&L. Vast operated according to C&L's safety plan, but decided it was safer to work outside the area marked by C&L. Design did not instruct Vast to work in the specific area where Torres fell at the time of the injury, nor is there evidence it retained control over the path near where the injury occurred. Moreover, there is no evidence that Vast requested specific safety measures from Design.

Design's general supervisory role at the jobsite does not create an inference that it retained control over Torres's work when those responsibilities were delegated to C&L. "The *Privette* line of decisions . . . establishes that an independent contractor's hirer presumptively delegates to that contractor its tort law duty to provide a safe workplace for the contractor's employees." (*SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.4th at p. 600.) "[A] hirer is not liable to a contractor or a contractor's employee merely because it retains control over safety conditions." (*Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1446.) Torres must show that Design actively directed Torres about the manner of performance of the

12

contracted work, required the work be done by a particular means, or otherwise interfered with the means of accomplishing the work. (*Ibid*.) He has not done so.

Torres also argues that Studley's use of the word "we" when discussing the safety plan with C&L creates a triable issue of material fact as to whether Design retained control over rooftop safety. However, Torres has taken this statement out of context. Our review of Studley's testimony in its entirety and his communications with C&L show that C&L was responsible for creating the safety plan to address the skylight hazard. While Design identified the skylights as a hazard, C&L established the marked pathway to address them. As such, the evidence submitted by Torres does not create a triable issue of material fact that Design retained control over his work.

Nevertheless, even assuming that Design's general supervisory role over the jobsite and its discussions with C&L regarding the skylight hazard was sufficient to create a triable issue of fact on whether Design retained control over Torres's work, he has not presented evidence that shows Design contributed to his injuries.

The facts here are analogous to those in *Hooker*, *supra*, 27 Cal.4th 198. "Hooker was a crane operator. He was employed by a general contractor hired by the California Department of Transportation (Caltrans) to construct an overpass. The overpass was 25 feet wide, and the crane with the outriggers extended was 18 feet wide, so Hooker would retract the outriggers to allow other construction vehicles or Caltrans vehicles to pass. Shortly before the fatal accident, Hooker retracted the outriggers and left the crane. When Hooker returned, he attempted, without first reextending the outriggers, to swing the boom. Because the

13

outriggers were retracted, the weight of the boom caused the crane to tip over.  Hooker was thrown to the pavement and killed." (*Id.* at p. 202.)

Regarding the question of whether Caltrans had negligently exercised the control it had retained over safety at the jobsite, Hooker relied on Caltrans's construction manual and the testimony of Caltrans officials responsible for supervising the jobsite.  (*Hooker*, *supra*, 27 Cal.4th at p. 202.)  The Caltrans construction manual provided that:  " '[C]altrans is responsible for obtaining the Contractor's compliance with all safety laws and regulations. . . .  [¶]  The construction safety coordinator must be familiar with highway construction procedures and equipment, construction zone traffic management and be able to recognize and anticipate unsafe conditions created by a Contractor's operation. . . .  [¶]  The Construction Safety Coordinator shall visit contracts [*sic*] periodically to observe the Contractor's operation and traffic conditions affected by the construction.' " (*Ibid.*, italics omitted.)  The manual also "gave the Caltrans resident engineer authority to set compliance schedules for the correction of dangerous conditions and to shut down affected operations until the dangerous conditions were corrected."  (*Ibid.*)

"The senior Caltrans representative on the jobsite, whose responsibilities included safety, had previously observed the crane operators on this project retract their outriggers to let other vehicles pass; he knew they did so 'from time to time[ ] or frequently'; and he realized that a crane would be unstable if its boom were extended over its side when its outriggers were retracted.  The resident Caltrans engineer on the project had the power to shut the project down because of safety conditions and to remove employees of the contractor for failing to comply with

14

safety regulations.  He answered 'probably' to the following two questions:  (1) 'Do you agree that if [the crane operator] had been given priority in the area he was working in and the [overpass] was flagged off, that he wouldn't have had to retract his outriggers to permit vehicles to pass?' and (2) 'And if he hadn't retracted his outriggers, the crane wouldn't have become unstable and tipped over, correct?'  A Caltrans transportation engineer on the project, whose responsibilities included bringing unsafe conditions to the attention of the resident engineer or the general contractor, conceded that if he had seen a crane operator retract the outriggers to permit vehicles to pass, he would have felt 'odd' because the more the outriggers are extended, 'the better the stability.  That's simple physics.' " (*Hooker*, *supra*, 27 Cal.4th at pp. 202–203.)

The California Supreme Court affirmed the trial court's grant of summary judgment in favor of Caltrans, determining that Hooker raised triable issues of material fact as to whether Caltrans retained control over safety conditions at the jobsite, but failed to raise a triable issue as to whether Caltrans exercised the retained control so as to affirmatively contribute to Hooker's death.  (*Hooker*, *supra*, 27 Cal.4th at p. 202.)

Similarly, here, in its agreement with SMS, Design assumed sole responsibility for safety on the jobsite, including ensuring all work was done according to any applicable laws and regulations.  Design could inspect the subcontractors' work and had the right to shut down work if it was done in an unsafe manner.  Studley, who was responsible for jobsite safety, testified that he would check to make sure the delineators designating the roof pathway were linked, and had he known of Vast's plan to work on the eastern section of the roof, he would have required a

walkway route and protective barriers. Design was well aware that the skylights were a hazard and discussed this with C&L.

But, just as in *Hooker*, none of these facts show anything more than Design's responsibility to provide general supervision over jobsite safety, which is not enough to create a triable issue on whether Design affirmatively contributed to Torres's injury. Design is not liable to Torres merely because it retained some control over safety conditions. (*Tverberg v. Fillner Construction, Inc., supra*, 202 Cal.App.4th at p. 1446.) Rather, Torres must show that Design actively directed Torres about the manner of performance of the contracted work, required the work be done by a particular means, or otherwise interfered with the means of the accomplishing the work. (*Ibid*.) The record supports the conclusion that Design did not otherwise control or interfere with Torres's work.

Moreover, while this appeal was pending, our Supreme Court decided *Sandoval v. Qualcomm Inc.* (Sept. 9, 2021, S252796) ___ Cal.5th ___ [2021 Cal.Lexis 6327] and reaffirmed the principle that for the retained control exception to *Privette* to apply, the plaintiff "must establish not only that the hirer retained control over the contracted work, but also that the hirer actually exercised that retained control in a manner that affirmatively contributed to the contract worker's injury."[6] (*Sandoval*, at p. *22, citing *Hooker, supra*, at p. 202.) *Sandoval* clarified that "a hirer's authority over the contracted work amounts to retained control only if the hirer's exercise of that

_____

[6] After oral argument, the parties submitted letter briefs discussing the impact of *Sandoval v. Qualcomm Inc.* on the issues raised in this appeal.

authority would sufficiently limit the contractor's freedom to perform the contracted work in the contractor's own manner." (*Sandoval*, at p. *23.) As stated above, there is no evidence that Design limited Vast's freedom to conduct the contracted work in its own manner. While Design retained general supervisory control over the worksite, Vast was free to create its own safety plan and did so by instructing Torres to work on the eastern section of the roof where the skylights were further apart.

Torres makes several additional arguments to show Design affirmatively contributed to his injuries. We will address each point in turn. First, Torres argues that Design understaffed the SMS project which compromised safety. This is just another iteration of Torres's argument that Design breached its duty to generally supervise safety on the jobsite, thus affirmatively contributing to the accident. Again, "mere retention of the ability to control safety conditions is not enough. '[A] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff.' " (*Hooker*, *supra*, 27 Cal.4th at p. 209.) To the extent Torres argues that Design made a specific promise to supervise him or Vast's employees, he has not submitted evidence to support such an inference. Absent a specific promise to undertake a particular safety measure, a hirer's failure to institute safety measures is not actionable. (*Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52, 66.)

Second, Torres contends that Design's failure to comply with the regulations set by the Division of Occupational Safety and Health (Cal/OSHA) affirmatively contributed to his injury. However, our Supreme Court rejected a similar argument in *SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.4th at pages 603 and 604, finding no reason to limit *Privette* because the tort law duty, if any, that the hirer owes happened to be one based on a statute or regulation, including Cal/OSHA.

Third, Torres asserts that Design affirmatively contributed to his injuries by establishing a pathway on the roof and periodically checking to make sure the delineators along the pathway were linked. However, Torres has not presented any evidence that Design established the pathway or restricted Torres or any other Vast employees' movement while they were working. Hernandez testified that he, not Design, determined the safest pathway on the roof for Vast employees. To the extent the roof was marked, C&L, not Design, stated it would mark a pathway on the roof with delineators and caution tape. Further, nothing in the relevant agreements or safety plans says that Design would establish a path for workers on the roof. Torres relies on the agreement between SMS and Design which made Design solely responsible for jobsite safety. However, as discussed above, retained control over the general safety of a jobsite does not constitute the necessary affirmative contribution to establish the retained-control exception to *Privette*. (*Hooker*, *supra*, 27 Cal.4th at p. 202.)

Fourth, Torres contends Design should have provided a horizontal lifeline, anchor points, or other means of fall protection to prevent Torres and other workers from falling through a skylight. But there is no evidence that Design agreed to provide

18

Torres with adequate anchor points or any other safety equipment. The failure to implement specific safety measures is not actionable unless there is some evidence that the hirer agreed to implement them. (*Tverberg v. Fillner Construction, Inc.*, *supra*, 202 Cal.App.4th at p. 1446.) To the extent Torres argues that Design's installation of anchor points for its own employees created a duty to make anchor points available to Torres, this is not the law. "The *Privette* line of decisions . . . establishes that an independent contractor's hirer presumptively delegates to that contractor its tort law duty to provide a safe workplace for the contractor's employees." (*SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.4th at p. 600.)

Fifth, Torres argues that Design affirmatively contributed to Torres's injuries by cutting holes in the roof and installing anchor points for its workers, but not Torres. This contention fails for a number of reasons. As stated above, Torres has not produced any evidence that shows that Design promised to provide him with anchor points or other safety equipment. Indeed, in its agreement with C&L, Design required subcontractors to supply their own safety equipment. There is also no evidence to connect the holes on the roof to Torres's fall. The holes that Design cut into the roof were on the western section of the roof and there is no evidence that Torres tripped on anything but the skylight while walking on the eastern section.

Lastly, Torres asserts that Design pressured him to work hurriedly and that Studley told him to "[g]et it done." But a general contractor's control over a project's schedule, without more, is not an affirmative contribution. (*Brannan v. Lathrop Construction Associates, Inc.* (2012) 206 Cal.App.4th 1170, 1178.) Further, beyond Studley's statement to Torres and the conclusory

19

assertion by Torres's expert that the rushed schedule compromised safety, there is no evidence that Design controlled the pace of Torres's work or that the schedule contributed to the accident.

Accordingly, Torres failed to meet his burden to show a triable issue of fact on whether Design retained control over his work or that it affirmatively contributed to his injuries.

## DISPOSITION

The judgment is affirmed.  Design Group Facility Solutions, Inc. is awarded its costs on appeal.

NOT TO BE PUBLISHED.


                                                        HILL, J.[*]


We concur:



            EDMON, P. J.



            LAVIN, J.

_____

[*] Judge of the Superior Court of Santa Barbara County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.