Filed 8/16/22 Ayala v. Tyler Development CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALBERTO AYALA et al., | B310262 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC697015) |
| v. | |
| TYLER DEVELOPMENT COMPANY, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge. Affirmed.

Banafsheh, Danesh & Javid, Olivier A. Taillieu, Jennifer R. Bagosy and Gilda Gazor, for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, Philip N. Blanco and Tracy D. Forbath, for Defendants and Respondents.

———————————

Luis Ayala tragically died while working on a sump pump at a construction site. His parents, Alberto Ayala and Laura Dominga Roque de Ayala (collectively the Ayalas), filed a wrongful death suit against, among others, general contractor Tyler Development Company, Inc. (Tyler). The trial court granted Tyler summary judgment based on the *Privette* doctrine (*Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*)), which holds that a hirer of an independent contractor is typically not liable for the contractor's negligence. (*Id*. at pp. 691–692.) Plaintiffs timely appealed. For the reasons below, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I. The Underlying Construction Project**

Tyler is a general contractor working in the home construction industry. In 2014 and 2015 Tyler contracted with D&D Construction Specialties, Inc. (D&D), an excavation company, to perform various remediation tasks on a residential construction site in Bel-Air, such as clearing, grading, and shoring the land. D&D employed Luis as a construction worker.[1]

The 2014 and 2015 agreements each contained an identical set of rules related to worksite safety. These rules required D&D to comply with all applicable safety regulations in conducting its work, and to keep the worksite "clean and free of trash, debris, or material waste caused by its employees or its work."

On May 1, 2015, Tyler expanded the scope of D&D's original responsibilities to include building a large hole to collect water runoff and pump it offsite (sump pump). This entailed digging a shaft approximately 50 feet deep and installing a series of prefabricated concrete liners to secure the sump pump's walls.

---

[1]     Because some of the parties share surnames, we refer to Luis by his first name. No disrespect is intended.

Once D&D completed its assigned work, Tyler installed a bolt-fastened lid over the opening of the sump pump to prevent it from becoming "an open fall hazard."

On or before October 18, 2016, Jeffrey Tapper, a project superintendent at Tyler, opened the lid of the sump pump to begin the next phase of construction. Upon noticing an accumulation of mud and water at the bottom of the pit, Tapper sent an e-mail to D&D's president, Dan Moore, asking him to have his workers clean out the sump pump. Tapper opined that the cleaning job was D&D's responsibility, as "they built this pit and covered it until we uncovered it to find it was full of mud and water."

After briefly disputing which company was responsible for the cleanup, Moore agreed that D&D would handle it. Tapper later testified that he did not expect D&D to "lower a person down into the sump pit," instead anticipating that they would use "a suction hose" or "lower a bucket" to "scoop [the mud and water out]."

## II. The Accident

On October 21, 2016, D&D employees received a work order instructing them to use a crane-mounted basket to lower an employee into the sump pump to clean it. One employee, Carlos Casteneda, responded by gathering an electric pump, a hose, and shovels to be used in the cleanup.

As Tapper walked through the worksite, he asked another D&D employee, Jason Carr, if D&D would be able to clean the sump pump that day. Carr confirmed that the D&D crew "was working on it." Tapper advised Carr that any employee working around the sump pump should wear a safety harness connected to a rope to prevent accidental falls.

Mechanical issues with the crane delayed the job. Carr told Casteneda that Moore had called the worksite "very angry about the situation," and had instructed Luis, Carr, and Casteneda to get the crane working.

Once they got the crane started, Luis put on a safety harness. At the last minute, he decided not to attach the harness to a retractable rope. Luis mounted the basket, and Carr used the crane to lower him into the sump pump. Casteneda watched Luis's descent from the opening of the pump.

As Luis descended, Casteneda could see him begin to exhibit signs of dizziness. Casteneda shouted for Carr to stop the crane, but it was too late. Luis lost consciousness, pitched forward, and fell out of the basket to the bottom of the shaft. He died before rescuers arrived.

## III. The Lawsuit

On March 5, 2018, the Ayalas initiated a lawsuit against Tyler and several other parties associated with the construction project. Their complaint asserted two causes of action against Tyler, namely, wrongful death and survival damages. They alleged that Tyler directed Luis to "place himself into a basket to be lowered into the sump well," and claimed that Tyler failed to properly train Luis or advise him of the dangers associated with entering the sump pump.

On July 31, 2019, Tyler moved for summary judgment. It argued that the *Privette* doctrine relieved Tyler, a general contractor, of any liability for injuries sustained by its independent subcontractor's employees, including Luis. The Ayalas opposed Tyler's motion, arguing that the *Privette* doctrine did not apply because Tyler retained control over the worksite and engaged in negligent conduct that directly caused Luis's

death.  They also argued that the nondelegable duty doctrine imposed a duty on Tyler to ensure compliance with state safety regulations, including regulations about workers entering confined spaces like the sump pump.

The matter proceeded to a hearing on October 22, 2020.  On November 30, 2020, the trial court granted summary judgment in Tyler's favor.  In a lengthy ruling, the court agreed with Tyler's assertion that the *Privette* doctrine barred liability, and rejected the Ayalas' arguments to the contrary.

The Ayalas timely appealed.

## DISCUSSION

### I.  Applicable Law and Standard of Review

#### A.  The *Privette* Doctrine

"[W]orkers' compensation scheme 'is the exclusive remedy against an employer for injury or death of an employee.' [Citations.]"  (*Privette, supra,* 5 Cal.4th at p. 697.)  In *Privette*, the Supreme Court held that "'an independent contractor's employee should not be allowed to recover damages from the contractor's hirer, who "is indirectly paying for the cost of [workers' compensation] coverage, which the [hired] contractor presumably has calculated into the contract price." [Citation.]'"  (*Alvarez v. Seaside Transportation Services* LLC (2017) 13 Cal.App.5th 635, 640 (*Alvarez*).)  Thus, the *Privette* doctrine bars an employee of an independent contractor from recovering damages from the hirer of the contractor for a worksite injury. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 (*SeaBright*).)

In addition to the workers' compensation rationale, the Supreme Court has recently placed greater emphasis on the reason that a "presumptive delegation of tort duties occurs when the hirer turns over control of the worksite to the contractor so

5

that the contractor can perform the contracted work." (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 271 (*Sandoval*).) "Over time, we've recast our primary rationale for the *Privette* doctrine in terms of delegation rather than workers' compensation." (*Sandoval, supra,* at p. 270; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 41 (*Gonzalez*) ["Our more recent cases emphasize delegation as the key principle underlying this rule"].) As a result, "[t]here is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety." (*Gonzalez, supra,* at p. 37.)

However, the *Privette* doctrine has exceptions. As relevant here, the nondelegable duty doctrine provides that an employee of an independent contractor "'may sue the general contractor for [violations of] specific, nondelegable duties in certain cases.'" (*Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137, 147 (*Evard*).) Additionally, the "retained control" exception provides that "a hirer owes a duty to a contract worker if the hirer retains control over any part of the work and actually exercises that control so as to affirmatively contribute to the worker's injury." (*Sandoval, supra*, 12 Cal.5th at p. 271, citing, *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).)

### B. Summary Judgment in *Privette* Doctrine Cases

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of fact exists only if a trier of fact could reasonably conclude under the applicable standard of proof that a contested fact in

6

favor of the opposing party is established. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)

If a defendant hirer invoking the *Privette* doctrine moves for summary judgment, it must present a valid factual basis for applying the doctrine. In cases involving a workplace injury, this is typically satisfied by showing that (1) the hirer employed the independent contractor to work at the jobsite and (2) the employee was injured while working at the site. (*Alvarez, supra,* 13 Cal.App.5th at p. 644.)

If the hirer meets this burden, the presumption of delegation is triggered and the burden shifts to the plaintiff. The plaintiff can rebut the presumption of delegation by presenting evidence making a prima facie showing of a triable issue of fact in support of one or more exceptions to the *Privette* doctrine. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.) If the plaintiff fails to raise a triable issue of fact, the hirer is entitled to summary judgment. (*Alvarez, supra,* 13 Cal.App.5th at p. 646.)

### C. Standard of Review

Summary judgment is subject to de novo review. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.) In "reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. [Citation.]" (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 190.)

## II. Analysis

Tyler established that it is entitled to the presumption of delegation under the *Privette* doctrine. It presented evidence that

it hired Luis's employer, D&D, to work on the construction project, and that Luis died while working on the project. This evidence "sufficient[ly] . . . establish[ed] that the *Privette* presumption applied and, therefore, shifted the burden to plaintiff to raise a triable issue of fact." (*Alvarez, supra*, 13 Cal.App.5th at p. 644.)

The Ayalas assert that two exceptions to the *Privette* doctrine apply to this case. First, they argue that the nondelegable duty doctrine prohibits Tyler from delegating its duties to comply with workplace safety regulations to D&D. Alternately, they argue that the retained control exception applies. We address each of these exceptions in turn.

### A. Nondelegable Duty Doctrine

As we outlined above, "[w]hen a hirer delegates contracted work to an independent contractor, it also impliedly delegates its duty to provide a safe workplace to that contractor." (*Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1445.)

These delegable duties include the duty to comply with most safety regulations promulgated under the California Occupational Safety and Health Act of 1973 (Cal-OSHA; see Lab. Code, § 6300 et seq). (See, *e.g., SeaBright, supra*, 52 Cal.4th at p. 602; *Padilla v. Pomona College* (2008) 166 Cal.App.4th 661, 673.) However, Cal-OSHA regulations that expressly require a general contractor to ensure the safety of independent subcontractors are not delegable. (*Khosh v. Stables Construction Co., Inc.* (2016) 4 Cal.App.5th 712, 720 [regulations imposing permanent obligations on specific parties are nondelegable]; see, e.g., *Evard, supra,* 153 Cal.App.4th at p. 148 [regulation requiring the owner of a billboard to maintain horizontal safety lines on the billboard imposed an ongoing, nondelegable duty].)

8

The Ayalas argue that California Code of Regulations, title 8, section 5157, subdivision (c)(8) imposes specific, ongoing, nondelegable duties on a "host employer" to ensure the safety of a contractor's employees tasked with entering confined spaces, such as the sump pump.[2]  However, assuming arguendo that this regulation imposes a nondelegable duty on general contractors, it does not apply to D&D's work cleaning the sump pump.

California Code of Regulations, title 8, section 5157, subdivision (c)(8) only applies when a host employer "arranges to have [a contractor's] employees . . . perform work that involves . . . confined space entries."  Here, the record shows that Tyler did not arrange to have D&D employees perform work involving entering the confined space of the sump pump.  It merely arranged to have D&D clean the water and mud at the bottom of the sump pump.  Tyler did not specify any particular method for cleaning the sump pump, and its project superintendent testified that he expected D&D to use "a suction hose or a bucket."  The fact that Tyler did not obtain a confined entry space permit for anyone on the site, including its own employees, further demonstrates that Tyler did not anticipate that D&D would lower an employee to the bottom of the sump pump to accomplish the cleanup.

Accordingly, we conclude that the nondelegable duty doctrine does not bar the *Privette* doctrine from relieving Tyler of liability for Luis's death.

---

[2]      The regulation defines "host employer" as an employer who hires work out to a contractor.  (Cal. Code Regs., tit. 8, § 5157, subd. (c)(8).)  As an employer who hired D&D to handle construction of the sump pump, Tyler arguably qualifies as a host employer subject to this regulation.

On appeal, the Ayalas alternately argue that any otherwise delegable duties to maintain safety during the sump pump cleanup cannot be delegated under the *Privette* doctrine, because the cleanup was outside the scope of the work D&D was contracted to perform. They contend that *Privette* limits delegable duties to "safety requirement[s] . . . connected to the **precise** subject matter of the agreement between the hirer and contractor."

We need not delineate the precise boundaries of the *Privette* doctrine here, because the record in this case demonstrates that Tyler and D&D agreed that cleaning the mud and water from the bottom of the sump pump was a part of D&D's contractual obligations. Under the terms of the contract, D&D agreed to keep the worksite clean, including by cleaning "debris or material waste caused by its employees or its [w]ork."

Although it is unclear whether the water and mud at the bottom of the sump pump constitute "debris or material waste caused by" D&D, Tapper opined in writing that the mud and water was left over from D&D's construction work. D&D eventually agreed to undertake the cleanup, apparently agreeing with Tapper's interpretation. And ultimately, it was D&D, not Tyler, that ordered its employees to clean out the sump pump. If the cleanup job was completely outside the scope of D&D, it should not have acceded to Tyler's request to undertake it.

**B. Retained Control Exception**

The presumption of delegation under *Privette* is partially grounded in the principle that "independent contractors by definition ordinarily control the manner of their own work." (*Sandoval, supra*, 12 Cal.5th at p. 269.) If a hirer entrusts work to an independent contractor, but retains control over safety

10

conditions at a jobsite and then negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it undermines this principle. Accordingly, the hirer becomes liable for the employee's injuries based on its own negligent exercise of retained control. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 670; *Hooker, supra*, 27 Cal.4th at p. 213.)

Here, D&D exercised sole control over the manner in which it cleaned the sump pump. It was responsible for determining the general method and specific techniques it would employ during the cleanup, and, as the party who built the sump pump, had knowledge of the dangers inherent in working on or in a space of that depth.

Conversely, Tyler's involvement in the task was limited to asking D&D to clean the sump pump and unbolting the lid to allow D&D's employees access to the sump pump's opening. Tyler did not dictate how the sump pump should be cleaned, and it did not direct any D&D employee to enter it. To the contrary, a Tyler representative recommended that all D&D employees working in the area around the sump pump be connected to a safety harness after the lid was opened, so that employees would not accidentally fall into the sump pump.

The Ayalas put forth several factors purporting to demonstrate Tyler's retained control over all work performed on the sump pump after its construction. They point out that Tyler controlled access to the sump pump by retaining the sole means of unlocking its lid, and that D&D was not contractually obligated to ensure that the sump pump was in good order for the duration of the construction project. These factors are not sufficient to establish a triable issue of material fact as to

11

whether Tyler retained control over D&D's execution of the sump pump cleanup.

Lastly, the Ayalas argue that there is a triable issue of material fact over whether Tyler's conduct in providing inadequate safety warnings or failing to issue a directive prohibiting D&D employees from entering the sump pump constituted an affirmative act of negligence, amounting to a negligent exercise of retained control. However, in the words of our Supreme Court, "'[a] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the [subcontractor's employee].'" (*Hooker, supra*, 27 Cal.4th at p. 209.)

### III. Conclusion

The Ayalas did not meet their burden to demonstrate that either the nondelegable duty doctrine or the retained control exception precluded application of the *Privette* doctrine. Accordingly, we conclude that the trial court properly granted summary judgment to its causes of action against Tyler.

### DISPOSITION

The judgment is affirmed.  Tyler is awarded costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT

13